### State v. Cathcart
*[Cite as 5 AOA 284]*

*Case No. 89AP-1118*
*Franklin County, (10th)*
*Decided July 10, 1990*

*Michael Miller, Prosecuting Attorney, and Bonnie L. Maxton, for Appellee.*

*James Kura, Public Defender, and Allen V. Adair, for Appellant.*

BRYANT, J.

Defendant-appellant, Larry D. Cathcart, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of voluntary manslaughter in violation of R.C. 2903.03.

Defendant lived with his mother, and his mother's boyfriend, Michael Long. Late in the afternoon of August 3, 1988, Long and defendant's mother began arguing, and continued to argue sporadically throughout the evening. Eventually, Long took defendant's mother's car without her consent. With the assistance of one of defendant's friends, defendant's mother searched the area for Long, but was unable to find him. However, on her return, he was upstairs at her home.

After her initial reluctance to confront Long, she went upstairs and an argument followed. She came downstairs first, and sat in her car; Long had the keys. When Long came out of the house, she began honking the horn. Long was pulling things out of the trunk of the car. Viewing this scene, defendant and his younger brother, Damon, went to get clubs that were lying in the backyard. When Long sat down on the front porch of the house, defendant ran in the house to get a gun. Defendant first fired one shot in the air in an attempt to scare Long. Defendant then came around the side of the house to see if Long was still on the front porch. Observing that Long was no longer there, defendant ran back because he heard the horn honking again.

Long had taken a club out of the trunk. As soon as defendant saw Long swing the club at his mother, defendant approached Long. Long asked

if defendant wanted "some of him," and began to walk away. Defendant told him to drop the keys and give his mother her money; Long refused. Defendant threatened to shoot Long, and Long said to do so. As Long continued to walk away, defendant pushed him. Long turned around and swing the club at defendant, defendant ducked, and pushed him again. When he pushed him the second time, the cocked gun fired and Long fell to the ground at the parking lot at 870 Mt. Vernon Avenue.

Defendant's mother ran to the body, pulled her belongings out of Long's pockets, and handed defendant the keys so that he could leave. Defendant went to his grandmother's home, and called his father. Defendant drove to his father's house, and at his father's suggestion, went to the police station to turn himself in along with the gun used to shoot Long. Defendant was met at the police station by an officer who indicated that defendant met the description of the person they were looking for in connection with the shooting. Defendant was led to a room where he told the officers the facts as related herein.

Defendant was indicted on one count of murder with a firearm specification. The jury found defendant guilty of the lesser included offense of voluntary manslaughter, and defendant was sentenced thereon, with a firearm specification.

Defendant appeals therefrom, setting forth five assignments of error:

"1. The prosecution was erroneously permitted to play a videotape of the defendant's statement to the police before presenting adequate proof that a crime had been committed.

"2. Appellant's conviction was not supported by the evidence, consequently:

"(A) The court erroneously overruled the defense motion for a judgment of acquittal made at the conclusion of the state's case.

"(B) Reversal is warranted upon appellate review.

"3. (A) The court erroneously instructed the jury:' (1) That the lesser included offense of voluntary manslaughter could be established by merely showing that the defendant knowingly caused the death of another without reference to the mitigating factor set forth in P.C. 2903.03; (2) That such lesser offense could only be considered if the jury concluded the killing was not purposeful.'

"(B) Appellant's conviction must be reversed as it was based on a theory of culpability not intended by the legislature.

"4. The court erroneously refused to instruct on accident.

"5. Appellant received ineffective assistance of counsel."

In his first assignment of error, defendant contends that the trial court improperly allowed the state to introduce defendant's confession into evidence before the state presented adequate proof that a crime had been committed.

As the Supreme Court indicated in *State v. Edwards* (1976), 49 Ohio St. 2d 31:

"There must be some evidence in addition to a confession tending to establish the *corpus delecti,* before such confession is admissible." *Id.,* paragraph 1(b) of the syllabus. In a homicide prosecution, *corpus delecti* involves two elements: "the fact of death, and the existence of a criminal agency of another as a cause of death." See *State v. Manago* (1974), 13 Ohio St. 2d 223. Moreover, as the Supreme Court noted in *State v. Maranda* (1916), 94 Ohio St. 364, the evidence tending to establish *corpus delecti* "*** is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged." Considering *Maranda,* the Supreme Court in *State v. Edwards, supra,* indicated that, given the "vast number of procedural safeguards protecting the due process rights of criminal defendants, the *corpus delecti* rule is supported by few practical or social policy considerations. This court sees little reason to apply the rule with dogmatic vengeance."

Applying the foregoing to the present case, we note that prior to the introduction of defendant's confession, the state offered the testimony of James McDevitt, a Columbus police officer with the crime search unit who arrived at the scene after the body had been transported to a hospital. However, when he arrived he found a hat, jacket, stick, and club, as well as a chalk mark tracing the spot where the body had lain, and a blood-marked spot where the head of the victim had been. The state also offered the testimony of Officer Mark Malone, who had gone to the scene and returned to the station. He then observed defendant, who matched the description of the person they sought in connection with the shooting, enter the station with his father; and he received from defendant and his father a plastic bag containing the gun used to shoot Long. Finally, the state offered the testimony of

David Cash who went to the hospital to check on the condition of the victim and observed Long's critical state. Thereafter, defendant's confession was played to the jury.

Given the foregoing, the state, at the very least, had -introduced evidence of a crime in the description of the scene, the condition of the victim immediately following the incident, and the gun defendant turned over to Malone at the police station. Accordingly, we find no error under the *corpus delecti* rule.

Moreover, we note that the state later introduced the coroner's testimony which indicated that Long died due to a gunshot wound to the head. Other witnesses also testified that Long was still at the scene when they arrived; and the medic who arrived at the scene described his efforts in attempting to treat Long. In short, the state possessed adequate evidence; and had defendant objected under the *corpus delecti* rule to the state's using his confession at that point in the trial, the state could have further met the rule by introducing some of its subsequent evidence at an earlier point in the trial. In the final analysis, we find no prejudicial error under defendant's first assignment of error.

In its second assignment of error, defendant contends that his conviction was not supported by the evidence.

The test for determining the sufficiency of the evidence "is whether reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt." *State v. Black* (1978), 54 Ohio St. 2d 304, 308. Further, in reviewing a case to determine whether the verdict is against the manifest weight of the evidence, we reverse the judgment of the trier of fact only where reasonable minds could not fail to find reasonable doubt. *State v. Antill* (1964), 176 Ohio St. 61, paragraph five of the syllabus. In each instance, the weight to be given to the evidence and determinations as to credibility of witnesses are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, paragraph one of the syllabus.

Applying the foregoing to the present case, we note that under his second assignment of error, defendant essentially argues three points:

"(1) that the trial court should have granted his Crim. R. 29 motion, since the state's evidence did not support any purposeful killing, as required under the statutory definition of murder;

"(2) that the affirmative defense of self-defense was established by the state's evidence,

thereby requiring acquittal under Crim. R. 29; and

"(3) that the conviction is not supported by the evidence."

As to the first contention, defendant states in his brief that "[solely on the issue of whether there was a purposeful killing, the court was obliged to reduce the charge to either voluntary or involuntary manslaughter." Hence, as defendant notes, had the trial court granted defendant's Crim. R. 29 motion for acquittal due to lack of evidence of a purposeful killing, a reduced charge of voluntary manslaughter would have remained. Coupling the foregoing with the jury's not finding defendant guilty of murder, or a purposeful killing, we find no prejudicial error in the trial court's refusal to grant defendant's Crim. R. 29 motion respecting the mental element of murder.

Defendant's second argument under the second assignment of error asserts that the trial court should have found self-defense as a matter of law under the evidence the state presented. As defendant properly notes, the elements of self-defense are set forth in paragraph two of the syllabus of *State v. Robbins* (1979), 58 Ohio St. 2d 74:

"To establish self-defense, the following elements must be shown:

'(1) the slayer was not at fault in creating the situation giving rise to the affray;

'(2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and

'(3) the slayer must not have violated any duty to retreat or avoid the danger. *(State v. Melchior,* 56 Ohio St. 2d 15, approved and followed.)'"

Applying those criteria to the facts before us, we find no error in the trial court's refusal to grant defendant's motion on the basis of self-defense. Specifically, reasonable minds could differ as to whether defendant was at fault in creating the situation giving rise to the incident; whether defendant had a bona fide belief that he was in danger of death or great bodily harm when Long carried a club, but defendant carried a gun; and whether defendant had no opportunity to retreat or avoid the danger, given the testimony that Long was leaving the scene when defendant pushed him.

Finally, the third prong of defendant's second assignment of error posits that, given his

self-defense assertions, defendant's conviction was not supported by the evidence. Again, we disagree. For the factual reasons that defendant's Crim. R. 29 motion properly was overruled, defendant's conviction is supported by the evidence.

Defendant's second assignment of error is overruled.

In his third assignment of error, defendant contends that the trial court erroneously instructed on the lesser included offense of voluntary manslaughter.

R.C. 2903.03(A) sets forth the definition of voluntary manslaughter, and states:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

The trial court instructed the jury regarding involuntary manslaughter as follows:

"Members of the jury, if, having found beyond a reasonable doubt causation and death, if you find that the state failed to prove beyond a reasonable doubt purpose to cause the death, or if you are unable to unanimously agree upon such a finding, you will then consider the lesser offense of voluntary manslaughter.

"Voluntary manslaughter is knowingly causing the death of another as distinct from purposely causing the death of another.

"Again, a person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature." (Tr. 384.)

Defendant primarily contends that the trial court erred in instructing the jury without mentioning the mitigating factors set forth in the statute; that the trial court's omission "took from the jury the possibility of finding the defendant guilty of voluntary manslaughter even if they were to conclude the killing was purposeful."

This court addressed a similar issue in State v. Holt (May 18, 1989), Franklin App. No. 88AP-1080, unreported (1989 Opinions 1714). Therein, we stated:

"In order for appellant to be convicted of voluntary manslaughter, the prosecution must show that *** [defendant] knowingly took the life of *** [the victim] within the jurisdiction and venue of the Franklin County Court of Common Pleas. *** The trial judge gave an instruction which essentially included those elements. Therefore, the instruction and conviction was in accordance with law and will not be overturned." *Id.* at 1719.

Moreover, as this court noted in *Holt:*

"Even if the trial court's instruction was incorrect, the error was not prejudicial. Our previous cases have all concerned instances where a defendant did not receive the requested instruction, thereby precluding a conviction on a lesser offense than murder. State v. Burgess (Apr. 10, 1984), No. 83AP-635, unreported (1984 Opinions 934); State v. Gray (March 8, 1988), Nos. 87AP-689 and 87AP-1044, unreported (1988 Opinions 604); State v. Duncan (Oct. 18, 1988), No. 88AP-161, unreported (1988 Opinions 3782). Here, the jury convicted appellant of the lesser crime, possibly relieving appellant of a conviction of murder. Appellant was found to have knowingly killed the victim. The fact that there were no mitigating circumstances benefitted defendant rather than the state, if the mitigating circumstances are not an element of voluntary manslaughter as the Supreme Court has held in Muscatello. See, also, State v. Solomon (1981), 66 Ohio St. 2d 214 at 219." *Id.* at 1719-1720.

According to *Holt,* "sudden passion" is not an element of the crime of voluntary manslaughter, and therefore, the prosecution need not prove it in order to sustain a conviction. *Holt, supra,* at 1720. Hence, under *Holt,* the trial court's instruction was proper. Moreover, to the extent the trial court's instruction may be considered error, the error is harmless, as defendant virtually concedes, since the jury found defendant guilty of voluntary manslaughter, not murder. Defendant's third assignment of error is overruled.

In his fourth assignment of error, defendant contends that the trial court erroneously refused to instruct on accident.

The state initially contends that defendant was not entitled to the requested instruction, as he had failed to submit the request in writing as required under State v. Fanning (1982), 1 Ohio St. 3d 19. The purpose of *Fanning,* however, is to alert the trial court of the specifics of the requested instruction. In some instances, the requested instruction is so clear that the failure to reduce it to writing does not preclude error in the trial court's failure to give the requested instruction. See State v. Bresson (Dec. 30, 1988), Franklin App. Nos. 88AP-440, 88AP-441, and 88AP-442, unreported (1988 Opinions 4827), reversed on other grounds (1990), 51 Ohio St. 3d 123. In the

instant case, defendant's counsel requested that the jury be given the standard instruction on accident as set forth in Ohio Jury Instructions Accordingly, the trial court was clearly advised of the nature and specifics of defendant's request. We therefore conclude that the requirements of *Fanning* are met in defendant's request for an accident instruction.

Nonetheless, we find no error in the trial court's refusing to grant the instruction. A homicide is not excusable on the ground of accident unless it appears that at the time of the killing the offender was acting lawfully and without negligence. *State v. Palmer* (Dec. 27, 1988), Franklin App. No. 87AP-1124, unreported (1988 Opinions 4726, 4729). In the present case, we are unable to conclude that defendant was acting lawfully in pointing a cocked, loaded gun at Long and in threatening to shoot him. Cf. *State v. Palmer, supra.* The evidence not supporting the instruction on accident, the trial court did not err in refusing to so instruct. *State v. Palmer, supra,* at 4729. Defendant's fourth assignment of error is overruled.

Finally, in his fifth assignment of error, defendant contends that he received ineffective assistance of counsel. According to *Strickland v. Washington* (1984), 466 U.S. 668, a two-part test is to be employed in determining whether counsel's assistance was so defective as to require reversal of a conviction:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.' Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

In the present case, defendant contends that his counsel's performance was deficient in several respects:

"(1) defendant's counsel allowed the state to play a videotape of defendant's confession, without objection, before *corpus delecti* had been established;

"(2) defense counsel failed to object to the trial court's instruction on voluntary manslaugh-

ter which omitted any mention of mitigating factors;

"(3) counsel failed to request an instruction on a lesser included offense of involuntary manslaughter, on the theory that defendant proximately caused the victim's death through the commission of the offense of assault; and

"(4) counsel failed to request an instruction on accident."

The first, second, and fourth of the foregoing contentions have been discussed in prior assignments of error. Having found no prejudicial error, we likewise find no error in counsel's performance that would meet the *Strickland* test. However, in defendant's third contention, he asserts that counsel's performance was deficient in his failure to request an instruction on the lesser included offense of involuntary manslaughter. We disagree. As the Supreme Court noted in *State v. Clark* (1988), 38 Ohio St. 2d 252, purpose is the key inquiry in determining whether the trial court was correct in refusing to instruct on involuntary manslaughter. On the facts herein, a finding that defendant's gun discharged accidentally after defendant pushed Long, that Long's death was the proximate result of the assault, was not probable. Moreover, counsel's failure to object may have been a tactical decision designed to eliminate a possible grounds for conviction if the jury failed to find the requisite mental element for murder or voluntary manslaughter. Considering the foregoing, we find, as a result, defense counsel's failure to request an instruction on involuntary manslaughter does not constitute ineffective assistance of counsel under *Strickland.* Accordingly, we overrule defendant's fifth assignment of error. Having overruled all five assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

McCORMAC and KERN, J.J., concur.

KERN, J., retired, of the Montgomery County Court of Common Pleas, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.