OPINION
John Sutphin was indicted on one count of aggravated robbery with a firearm specification on September 4, 1998. His motion to suppress "any statements, admissions or confessions" was overruled by the Greene County Court of Common Pleas following a hearing. Sutphin then entered a plea of no contest, and the trial court sentenced him to four years incarceration. He now appeals, raising two assignments of error.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REFUSING TO SUPPRESS APPELLANT'S CONFESSION WRONGFULLY INDUCED BY AN IMPLIED PROMISE TO DELIVER HIS MOTOR VEHICLE TO HIS WIFE.
Sutphin contends that the trial court should have suppressed his statements because they were made involuntarily due to a police officer's "implied promise" to him that his van would be returned to his wife if he confessed.
The evidence presented at the suppression hearing was as follows.
Officer Kevin Young of the Fairborn Police Department testified that, at approximately 2:48 p.m. on August 24, 1998, he had been dispatched to the Clark Oil Station ("the station") located on Kauffman Avenue in Fairborn, Ohio on a reported armed robbery that had just occurred. As Officer Young drove toward the station, he was informed that the suspect had driven away from the station in a van and that the van was being followed by an Ohio Department of Transportation ("ODOT") truck. Officer Young saw the van that was being driven by Sutphin and the ODOT truck, and he started to follow them. Officer Young signaled for Sutphin to pull to the side of the road, and Sutphin complied. Officer Young ordered Sutphin to place his hands outside the window and then started to approach Sutphin's van. Officer Young and another officer at the scene removed Sutphin from the van, handcuffed him, conducted a weapons search of his person, and placed him in the back seat of Officer Young's patrol car. The officers asked Sutphin for permission to search his van for the weapon, and Sutphin consented to the search.
After an unavailing search for the weapon, Officer Young got into his patrol car, planning to take Sutphin to the station for the store clerk to identify him when Sutphin asked "what was going to happen to his van." Officer Young responded that "it was probably going to be towed," and Sutphin asked if it could be returned to his wife. Officer Young responded that he would "have to check with the supervisor" and that he "could not promise him that [they] would turn the van over to his wife no matter what he said." Sutphin stated "that he would tell [the officers] exactly what happened if [they] would turn the van over to his wife." Officer Young then "told him to stop right there and called Officer Paul Liningston over to the car and verbally read him his Miranda rights" from a card. Sutphin indicated that he understood his Miranda rights. According to Officer Young, Sutphin had not given any indication that he was mentally or physically disabled or under the influence of drugs or alcohol. Officer Young also testified that he had not made Sutphin any threats or promises. Sutphin then told Officer Young that he had gone into the station with a gun in his waistband planning to rob the station but that he did not have the courage to do follow through with his plan. Sutphin explained that, as he had been walking out of the station, an ODOT truck driver walked in and learned from the store clerk what had just occurred. Officer Young asked Sutphin what he had done with the gun, and Sutphin told him that he had thrown it out the van window while he was being chased by the ODOT truck. Officer Young and Sutphin retraced the path of the chase in search of the weapon. According to Officer Young, Sutphin had been apologetic and, although he could not remember the exact location of where he had thrown the gun, he was "very cooperative" in trying to find it. After eventually locating the weapon, Officer Young transported Sutphin to the police station.
Detective Grover Songer testified that, approximately two hours after the robbery, he had removed Sutphin from a holding cell at the police station to interview him. Detective Songer read Sutphin his Miranda rights from a written "Pre-Interview Form," asked Sutphin if understood each right, and directed him to place his initials beside the statement of each right if he understood. Sutphin initialed every statement, and he signed the form below the statement, "With full knowledge of these rights, I waive these rights and agree to give a voluntary statement." Detective Songer proceeded to conduct a taped interview of Sutphin during which he had not appeared to be under the influence of drugs or alcohol, but he did appear stressed. Detective Songer testified that he had not made any threats or promises to Sutphin.
Sutphin testified that he had done three "$20 caps" of heroin on the day of the incident, that he had done the third cap at approximately 1:00 p.m., and that he had also taken a "nerve pill." Sutphin did not remember going into the station, and he remembered only "traces" of his encounter with Officer Young. He did not remember Officer Young reading him his Miranda rights, nor did he remember giving him a statement. Sutphin did recall the interview with Detective Songer. He testified that he had not intended to waive his Miranda rights because he would not have put himself in such a predicament, knowing the trouble that he was in.
On October 27, 1998, the trial court entered a judgment denying Sutphin's motion to suppress. The trial court found as follows:
 There was no evidence presented that would even slightly indicate that the Defendant was in anyway [sic] forced or threatened.
 The statements made to the police by the Defenant after the Miranda warnings would appear to be clearly voluntary.
 The Defendant also would appear to be indicating that the officer may have in some way bargained with the Defendant by holding out some hope the van could be turned over to his wife.
 However, the officer testified that in response to all such inquiries, he could make no promises.
 After consideration of all evidence, the Court would find that the Defendant was appropriately apprised of all his constitutional rights and voluntarily elected to make the statements.
The trial court also concluded that, even if Sutphin had not specifically expressed to Officer Young that he did want to waive his Miranda rights, he "can effectively waive his rights by making statments once he is apprised and indicates he understands his rights."
When a suspect files a motion to suppress inculpatory statements, the state bears the burden of showing by a preponderance of the evidence that the statements were voluntary.Lego v. Twomey (1972), 404 U.S. 477, 489. "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte (1996), 74 Ohio St.3d 555,562. "[C]oercive police activity is a necessary predicate to the finding that a confession is not `voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."Colorado v. Connelly (1986), 479 U.S. 157, 167. To determine the voluntariness of a confession, trial courts must consider the totality of the circumstances, including "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus. The question of voluntariness is a legal question that we review by conducting an independent analysis of the facts. Arizona v. Fulminante (1991), 499 U.S. 279, 287; Statev. Booher (1988), 54 Ohio App.3d 1, 7. However, weighing the evidence and determining witness credibility at suppression hearings are matters within the sound discretion of the trial court. State v. Mills (1992), 62 Ohio St.3d 357, 366.
Sutphin complains that his statements were not voluntary because they had been induced by Officer Young's "implied promise" that his van would be returned to his wife if he confessed, because he had been under the influence of heroin and a "nerve pill" at the time, and because Officer Young could not remember if he directly asked him if he chose to waive his Miranda rights.
In our judgment, the trial court reasonably believed Officer Young's testimony that he had told Sutphin that he would have to ask his supervisor whether the van could be returned to Sutphin's wife and that he could not make any promises that it would be returned. The trial court reasonably declined to infer, from Officer Young's statements to Sutphin and from his having had Officer Liningston read to Sutphin his Miranda rights, an implied promise to return the van to Sutphin's wife if Sutphin gave the police a statement. Furthermore, although Sutphin claims that he was under the influence of heroin at the time of his statements to Officer Young, the trial court did not abuse its discretion in believing the testimony of Officer Young and Detective Songer that Sutphin had not appeared to be under the influence of any drugs or alcohol. Finally, even if Sutphin had not been specifically asked by Officer Young whether he wanted to waive his Miranda rights, the trial court correctly found that Sutphin had effectively waived his Miranda rights by indicating that he understood his rights and proceding immediately thereafter to discuss the incident. See North Carolina v. Butler (1979), 441 U.S. 369, 373, in which the Supreme Court held that an express written or oral statement of waiver is not a necessary predicate to finding that the suspect effectively waived his Miranda rights because the test for an effective waiver is whether the suspect "in fact knowingly and voluntarily waived the rights delineated in the Miranda case." Thus, the trial court acted correctly in determining that Sutphin's statements were voluntary and in overruling his motion to suppress.
The first assignment of error is overruled.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL [ERROR] IN REFUSING TO SUPPRESS APPELLANT'S SECOND CONFESSION WHICH STATEMENT WAS ILLEGALLY OBTAINED AND THE "FRUIT OF A POISONOUS TREE."
Sutphin claims that, because his statements to Officer Young were made involuntarily, his subsequent statements to Detective Songer should have been suppressed as "fruit of a poisonous tree" pursuant to Wong Sun v. United States (1963), 371 U.S. 471. In light of our conclusion pursuant to Sutphin's first assignment of error that his statements to Officer Young were voluntary, his taped confession to Detective Songer was not "poisonous fruit." Thus, the trial court properly overruled Sutphins's motion to suppress as it pertained to his statements to Detective Songer.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Robert K. Hendrix
J. Allen Wilmes
Hon. Thomas M. Rose