OPINION
Defendant-appellant David Daniels appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of rape with a repeat offender specification in violation of R.C.2907.02. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On December 16, 1997, Jean Durant went over to her neighbor James Brooks' house to visit. Durant, who was seventeen years old at the time, had moved to Canton in either October or November of 1997 from her hometown, Brewster, Ohio. At the time of this incident, she was living rent free with a friend and the friend's family. James Brooks, his wife, Brandt Bryant, a woman known as "Granny", and appellant were at Brooks' home when Durant arrived. Durant had met appellant the night before. Shortly after arriving at the Brooks' home, Durant walked over to Maggiore's Drive Thru with Brooks' wife and appellant. After leaving Maggiore's the threesome went to a house known as "The Rock". After staying approximately ten to fifteen minutes, Durant and appellant left together. While Durant and appellant were walking down an alley, appellant hit Durant in the back of the head with his closed fist, causing her to fall to the ground. Appellant, then grabbed Durant by her shirt collar and dragged her ten to fifteen feet before throwing her down on the ground in the corner of an abandoned house. Durant testified that as appellant was dragging her, she was "kicking and trying to get away from him" and that she could barely breathe because he was choking her. Transcript of Trial at 295. After Durant attempted to avoid performing oral sex on appellant despite his demands that she do so, appellant pulled off Durant's pants and proceeded to have sexual intercourse with her. Durant testified that while appellant was trying to have intercourse with her, she told him that she had AIDS so that he would get off of her. Appellant, however, "just kept on going". Transcript of Trial at 296. Appellant also threatened to hit Durant with a brick and kill her if she screamed. Durant testified that appellant picked up the brick one time and held it over her head. While appellant was having intercourse with Durant, Durant urinated, causing appellant to become angry. Appellant then proceeded to stick his penis into Durant's mouth and ordered her to "swallow every bit of it" or be killed. Trial Transcript at 298. Durant, who believed that appellant had urinated into her mouth, then vomited. In all, Durant testified that during her one and a half to two and a half hour ordeal, appellant had both intercourse and oral sex with her three or four times and unsuccessfully attempted to have anal intercourse with her. She also testified that towards the end of her ordeal, she blacked out. When Durant awoke, appellant hit her in the face with his fist, causing a black eye. Both Durant and appellant subsequently ended up on the roof of an abandoned house. Durant, who had been pushed up on to the roof by appellant, told him that he could either run or she was going to scream at the top of her lungs. Appellant then ran away. After appellant left, Durant, who was naked from the waist down, jumped off of the roof and ran screaming and crying to James Brooks' house. Both Brooks and Brandt Bryant were at the house when Durant arrived. Brooks dialed 9-1-1 although Durant told him not to do since because she did not want "nothing coming down on me" and didn't want to get no trouble started." Trial Transcript at 305, 357. Shortly thereafter, appellant came to the door. Once he saw Durant sitting at the kitchen table, appellant took off running. When the police arrived, Durant was taken to the hospital where she was treated for vaginal injuries, cuts and bruises all down her legs and bruises on her back and neck and a black eye. Photographs were also taken of Durant's injuries. During cross-examination, Durant stated that the cut on her vagina could have been caused by someone else since she had had sex with someone else an hour before she was raped. Sergeant Bruce Allison of the Canton Police Department was assigned to investigate Durant's case. As part of his investigation, Sergeant Allison interviewed appellant while appellant was an in-patient at Columbia Mercy Medical Center. Appellant, Sergeant Allison testified, had told him that Durant had asked appellant for crack cocaine in exchange for sexual favors. According to appellant, he had consensual sex with Durant for approximately one hour. Both a written signed waiver of his constitutional rights and a tape-recorded statement were obtained from appellant. At trial Durant, however, denied using cocaine on the date of the offense. Appellant subsequently was arrested on January 30, 1998. On February 6, 1998, the Stark County Grand Jury indicted appellant on one count of rape in violation of R.C.2907.02, a felony of the first degree. The count of rape was accompanied by a repeat violent offender specification. At his arraignment on February 13, 1998, appellant entered a plea of not guilty to the charge contained in the indictment. Pursuant to a Waiver of Time filed on April 6, 1998, appellant waived his constitutional right to a speedy trial. Thereafter, on April 21, 1998, appellant filed a Suggestion of Incompetency stating that, because of appellant's long history of mental illness, he was incompetent to stand trial. Pursuant to two orders filed on April 29, 1998, the trial court ordered an evaluation of appellant's mental condition at the time of the offense and an evaluation of appellant's competence to stand trial. Following a competency hearing held on June 3, 1998, the trial court found appellant competent to stand trial. An order memorializing the trial court's finding was filed on June 8, 1998. On June 8, 1998, a Motion to Suppress was filed by appellant. Appellant, in his motion, requested that any and all statements taken from appellant by law enforcement officers while appellant was a patient at Columbia Mercy Medical Center be suppressed. One day later, appellant filed a "Written Plea of Not Guilty by Reason of Insanity." In the memorandum in support of his written plea of not guilty by reason of insanity, appellant indicated that a psychiatric examination of appellant on January 28, 1998, resulted in a diagnosis of atypical bipolar disorder, paranoia and chronic alcoholism. Pursuant to an order filed on June 16, 1998, the trial court ordered an evaluation of appellant's mental condition at the time of the offense. Pursuant to another order filed on June 16, 1998, the trial court found appellant competent to stand trial. Appellant, on July 17, 1998, filed a Motion for Disclosure of Transcript of Witness Testimony Before the Grand Jury pursuant to Crim.R. 6(E) and 16(B)(1)(f) and (g). Appellant specifically requested that James Brooks' testimony before the Grand Jury be transcribed and turned over to the trial court in-camera for use during trial. On July 29, 1998, appellant filed a Motion for Competency Re-evaluation. Pursuant to an order filed on August 21, 1998, appellant's motion was denied. A hearing on appellant's Motion to Suppress was held on August 31, 1998. At the conclusion of the hearing, the trial court overruled appellant's Motion to Suppress the statement of appellant taken while appellant was an in-patient at Columbia Mercy Medical Center. A Judgment Entry memorializing the trial court's decision was filed on September 1, 1998. Thereafter, the jury trial commenced on September 9, 1998. During the morning of the trial, appellant withdrew his plea of not guilty by reason of insanity since appellant had been found sane at the time of the offense. Also, prior to the start of trial, appellee made an oral motion in limine requesting that the trial court not permit testimony as to the use of crack cocaine in James Brooks' residence. The trial court sustained appellee's motion. At the conclusion of the evidence, the jury returned with a verdict on September 11, 1998, finding appellant guilty of rape in violation of R.C. 2907.02, a felony of the first degree. Thereafter, the trial court found appellant guilty of the repeat violent offender specification. Pursuant to an entry filed on September 14, 1998, appellant was sentenced to an aggregate sentence of seventeen years in prison. The trial court, following a H.B. 180 hearing, found appellant to be a sexual predator pursuant to R.C. 2950.09. It is from his conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
OVERRULING MR. DANIELS' MOTION TO SUPPRESS HIS ORAL AND TAPE RECORDED STATEMENTS MADE TO THE POLICE WHILE HE WAS IN CUSTODY WAS IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION IN VIEW OF THE LACK OF PROOF THAT THE STATEMENTS WERE VOLUNTARY AND/OR THE PURPORTED WAIVER WAS KNOWING AND INTELLIGENT.
ASSIGNMENT OF ERROR NO. 2
MR. DANIELS WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TRIAL COURT'S REFUSAL TO PERMIT THE DEFENSE TO FAMILIARIZE THE JURY WITH THE CIRCUMSTANCES SURROUNDING HIS ORAL AND HIS TAPE RECORDED STATEMENTS TO THE POLICE INCLUDING FACTS BEARING UPON THE WEIGHT AND VOLUNTARINESS OF THOSE STATEMENTS IN VIOLATION OF THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLEI, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
ASSIGNMENT OF ERROR NO. 3
MR. DANIELS WAS DENIED HIS RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO CONDUCT AN IN-CAMERA INSPECTION OF THE GRAND JURY TESTIMONY OF AN UNAVAILABLE WITNESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
ASSIGNMENT OF ERROR NO. 4
MR. DANIELS WAS DENIED HIS CONSTITUTIONAL RIGHTS TO A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE, A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TRIAL COURT'S UNDUE RESTRICTION ON CROSS-EXAMINATION, REFUSAL TO PERMIT INTRODUCTION OF EVIDENCE CONCERNING THE CIRCUMSTANCES AND SETTING OF A DEFENSE WITNESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
ASSIGNMENT OF ERROR NO. 5
THE CUMULATIVE EFFECT OF THE ERRORS AND/OR THE ACTS AND OMISSIONS OF COUNSEL DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A FAIR TRIAL, IN VIOLATION OF THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 I
Appellant, in his first assignment of error, maintains that the trial court violated his constitutional rights by admitting into evidence oral statements he made while in police custody without proof that such statements were made voluntarily and/or that appellant voluntarily, knowingly and intelligently waived his Miranda rights. Appellant's statements were both taped and transcribed. There is no doubt that appellant was in police custody at the time of such statements since he was handcuffed to his hospital bed with an armed police guard outside the door of appellant's room. A two-step approach must be undertaken in analyzing Miranda claims such as appellants. First, it must be determined whether appellant voluntarily, knowingly and intelligently waived his Miranda rights. State v. Clark (1988),38 Ohio St.3d 252, 261. Second, whether or not appellant's confession was voluntary must be determined. Id. "While voluntary waiver and voluntary confession are separate issues, the same test is used to determine both, i.e. whether the action was voluntary under the totality of the circumstances." Id., citing Fare v. Michael C. (1979), 442 U.S. 707, and State v. Edwards (1976),49 Ohio St.2d 31. A defendant's age, mentality, prior criminal history, "the length, intensity, and frequency of interrogation, the existence of physical deprivation or mistreatment, and the existence of threat or inducement" all should be considered in determining whether a confession is involuntary. Edwards, supra. at paragraph two of the syllabus. Before an action can be considered involuntary, there must be "police over-reaching" in the form of physical abuse or threats, for example. Colorado v. Connelly (1986), 479 U.S. 157. Appellant, in support of his contention that neither his waiver of his Miranda rights nor his confession were voluntary, points to the fact that when appellant was questioned by two police officers on January 30, 1998, he was in the hospital with a severe case of double pneumonia and was on a ventilator. Appellant who, as stated above, was under arrest at the time and was handcuffed to his hospital bed, had a history of psychiatric problems, including auditory hallucinations, dating back to 1975 and had in the past been hospitalized for psychiatric problems. At the time of the interview, appellant was being treated with Depakote, a drug used to treat anger management and impulse control, and Respiratol, a drug used to treat individuals with poor impulse control and the inability to make rational decisions. Just one day earlier, a psychiatrist had diagnosed appellant with atypical bipolar disorder and paranoia. However, despite the foregoing, this court finds that, under the totality of the circumstances, the trial court did not error in finding that appellant's statements to police were voluntary and that his waiver of his Miranda rights was knowing and intelligent and voluntary. At the August 1, 1998, suppression hearing, Sherry Marzick, a nursing manager at Mercy Medical Center who has completed many mental status assessments and has managed the psychiatric unit for 12 years, testified. Marzick, who was present when the two officers interviewed appellant for a period of between fifteen and thirty minutes, testified that the two officers were neither loud nor threatening while questioning appellant, but rather were "very professional" and repeated and/or paraphrased questions when it appeared that appellant, at times, did not understand them. Transcript of Suppression Hearing at 41. Marzick testified that, based upon her experience as a manager of the psychiatric unit, she believed that appellant was oriented and responding appropriately to the officers' questions. Marzick further testified that the officers were permitted to talk to appellant since she did not believe that appellant's health would be jeopardized by the police interview and that, during the interview, appellant "did not appear paranoid at all" and did not have trouble concentrating. Transcript of Suppression Hearing at 62. There was no evidence that, on the day in question, appellant was suffering from hallucinations. When questioned by defense counsel, Marzick testified that she was unaware of appellant's long history of depression and his hospitalizations for mental illness and that she had not spoken to appellant's treating psychiatrist or read his notes prior to the interrogation. Moreover, Sergeant Bruce E. Allison of the Canton Police Department also testified at the August 31, 1998, hearing regarding his interview of appellant. Allison testified that on January 30, 1998, he read appellant his constitutional rights and then reread him his rights again on tape. Allison, who was present when appellant signed the notice waiving his constitutional rights along with Detective Boudreaux, testified that appellant was responsive to his questions, answered the same appropriately, and was able to relate facts to him. Neither officer was in uniform and both were sitting while interviewing appellant. While both officers carried guns, the guns were not visible. There was, in short, no evidence of any coercive police activity, physical deprivation or mistreatment or threats leading to the conclusion that appellant's confession was not voluntary, nor is there evidence that appellant's waiver of his Miranda rights was not knowing, intelligent and voluntary. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues that he was denied a fair trial and due process of law by the trial court's refusal to permit the defense to familiarize the jury with the circumstances surrounding appellant's oral and tape recorded statements to the police including facts bearing on the weight and voluntariness of those statements. Appellant specifically challenges the trial court's failure to familiarize the jury with appellant's state of mind at the time of his statement to Sergeant Allison. To show appellant's state of mind, defense counsel unsuccessfully sought to introduce appellant's medical records at trial. The constitutional validity of a confession is a legal question for the trial court. See State v. Crawford (1972),32 Ohio St.2d 254 and State v. Bailey (1992), 90 Ohio App.3d 58. However, "the requirement that the court make a pretrial voluntariness determination does not undercut the defendant's traditional prerogative to challenge [a] confession's reliability during the course of the trial." Crane v. Kentucky (1986),476 U.S. 683, 688. The court in Crane noted that the physical and psychological environment that led to the confession can be of substantial relevance to the ultimate issue of a defendant's guilt or innocence. Id.at 689. Moreover, "[a]s one Ohio court has stated, in determining the weight to give a confession, a jury is entitled to hear evidence as to `the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and he existence of threat or inducement.'" State v. Hopkins (July 29, 1987), Hamilton App. No. C-860806, unreported, at 4, 1987 WL 14759. quoting State v. Edwards (1976),49 Ohio St.2d 31, 40-41, O. O. 3d 18, 23, 358 N.E.2d 1051, 1058-1059."
State v. Bailey, supra. at 69.
However, in the case sub judice, appellant's counsel conceded to the trial court that he was attempting to rehash the same issues that were covered during the suppression hearing. See Transcript of Trial at 57 — 58. Moreover, appellant's counsel made no attempt to challenge the reliability of appellant's confession during the course of the trial. Appellant's counsel never cross-examined Sergeant Allison regarding the reliability of appellant's statement to police but rather, improperly attempted to challenge the voluntariness of such statement by introducing appellant's medical records. Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, challenges the trial court's refusal to conduct an in-camera review of the grand jury testimony of James Brooks, who was unavailable to testify as a witness at trial. Appellant specifically asserts that Brooks' testimony was potentially exculpatory to appellant since it would have established that Durant had smoked crack cocaine prior to the alleged rape. Ohio Crim.R. 6(E) provides, in part, that "[d]eliberations of the grand jury and the vote of any grand juror shall not be disclosed. However, if the defense shows a "particularized need" for disclosure that outweighs the need for secrecy, all relevant portions of a grand jury transcript should be produced." State v. Greer (1981) 66 Ohio St.2d 139. A "particular need" exists "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial". State v. Davis (1988),38 Ohio St.3d 361, 365. A claim of particularized need cannot be replete with speculation and innuendo. State v. Stojetz (1999),84 Ohio St.3d 452, 460. The issue thus becomes whether the trial court abused its discretion when it denied appellant's request for an in-camera inspection of the grand jury testimony of James Brooks. See Stojetz, supra. An abuse of discretion implies that the trial court's ruling was arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217
Appellant argues that a particularized need for James Brooks' grand jury testimony was demonstrated in this case since, at trial, defense counsel presented the trial court with a document allegedly written by James Brooks stating as follows: "To whom it my concern: I, James H. Brooks, knowing and willing by signing this statement say that Jean [Durant] smoked crack cocaine with David Daniels [appellant] on or before he was sentenced for raping her. She smoke up his dope and left with him willingly. By, signed James H. Brook. P.S., I'm not to court."
The document had been given to defense counsel by a third party who told defense counsel that it was written by Brooks. Defense counsel argued that, as demonstrated by the document and due to Brooks' unavailability, there was a particularized need for Brooks' grand jury testimony since "[w]e believe that the grand jury, . . . testimony, if he [Brooks] testified truthfully, would indicate that the . . . alleged victim in this case did in fact consume crack cocaine on the day of the alleged rape." Trial Transcript at 266. Appellant previously had told the police that Durant consented to an exchange of sexual favors for drugs. However, as the trial court noted, there was no evidence that Brooks, in fact, had written the document in question. Rather, appellant's belief that Brooks' authored the note was based on speculation. The trial court, therefore, did not abuse its discretion by refusing to order disclosure of Brooks' grand jury testimony since appellant did not show a particularized need for the same. Appellant's third assignment of error is overruled.
 IV
Appellant, in his fourth assignment of error, claims that the trial court violated his constitutional right to due process of law and a fair trial by denying him a meaningful opportunity to present a complete defense. Appellant specifically points to the trial court's refusal to allow defense counsel to fully explore the source of Durant's injuries during cross-examination and the trial court's refusal to permit evidence that Durant had used crack cocaine on the day of the incident. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173. We will not, therefore, disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment." See Blakemore, supra. In the case sub judice, appellant was charged with rape in violation of R.C. 2907.02. One of the elements of the crime of rape is the use of force. While the State presented photographs and medical records showing that Durant suffered lacerations, contusions and bleeding in her genital area as a result of the rape, appellant sought to counteract such evidence with evidence that Durant's injuries could have resulted from a consensual sexual encounter that Durant admitted having with a third party just hours before the alleged rape. The trial court, however, held that such evidence was prohibited by the rape shield law, R.C. 2907.02, since it did not involve the origin of semen, pregnancy or disease. (No semen had been found during the rape kit protocol.) The General Assembly has sharply restricted the admissibility of evidence of the victim's sexual activity in rape cases by enacting R.C. 2907.02(D). That section provides, in pertinent part: "Evidence of specific instances of the victim's sexual activity . . . shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
Since the evidence sought to be introduced does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with appellant, the trial court did not err in holding such evidence inadmissible. Moreover, contrary to appellant's assertions, defense counsel did cross-examine Durant as to the source of her injuries. When asked by defense counsel at trial if anyone else could have caused her injuries on December 16, 1997, Durant responded as follows: "There was, ah, the cut of my vagina could have been caused by someone else, because I had sex an hour before he [appellant] raped me. But it wasn't nothing rough, it wasn't nothing that could hurt me". Trial Transcript at 354
Although defense counsel did not ask or attempt to ask Durant any additional questions about her previous sexual encounter, defense counsel did raise the issue of the same during closing arguments. Furthermore, as noted by appellee, appellant does not indicate what additional evidence the trial court improperly excluded regarding the source of Durant's injuries. Appellant also claims that he was denied a meaningful opportunity to present a complete defense by the trial court's refusal to permit evidence of the environment wherein the activity had taken place. However, appellant, in his own appellate brief cites to testimony at trial that indicates the area is a "high crime" area (page 21 of appellant's brief citing to pages 396 and 418 of the trial transcript), that James Brooks was having a party at his house on the day in question and that James Brooks was "feeling pretty good" by 7:00 to 7:30 P.M. (appellant's brief citing pages 373 and 374 of the trial transcript.) There are two pieces of information appellant claims he was unable to introduce on this issue at trial. The first is James Brooks' statement made to Brandt Bryant that the people at Brooks' house had been "smoking like a broke stove" that day. (Transcript p. 375) However, this statement of Mr. Brooks was hearsay. Appellant tried to use Evidence Rule 804(B)(3) to bring this testimony in through Bryant because Brooks did not show up to testify. However, we do not find this statement "at the time of its making" to have been "so far contrary to [Brooks'] pecuniary or proprietary interest, or so far tended to subject [Brooks] to civil or criminal liability, or to render invalid a claim by [Brooks] against another, that a reasonable person in [Brooks'] position would not have made the statement unless [Brooks] believed it to be true." Evidence Rule 804(B)(3). Therefore, the trial court correctly excluded such testimony. Appellant also tried to introduce testimony through Brandt of Brandt's opinion that Brooks "uses a lot of crack cocaine." (Transcript p. 382.) We do not find that the trial court abused its discretion in excluding this opinion about Brooks' general use of cocaine. The third area wherein the appellant claims the trial court denied him a meaningful opportunity to present a complete defense was the trial court's exclusion of a witness that would have testified that the complainant used crack cocaine on the day of the incident, contrary to the victim's direct testimony. The complainant, Ms. Durant, in her testimony, denied smoking cocaine at James Brooks' house before Ms. Durant left the house with the appellant. (Transcript page 340). The evidence excluded by the trial court was testimony of Lisa Brown, aka "Granny" who, during a voir dire, testified that Ms. Durant was ingesting crack cocaine that day through a "straight shooter". The trial court excluded this testimony on the ground that it was not closely enough related to appellant's defense (that the sex he had with the complainant was consensual and that it was done by the complainant for crack cocaine) to be more probative than prejudicial. (Transcript at Page 479.) We find that the exclusion of the testimony of Lisa Brown, aka "Granny", did deprive the appellant of the opportunity to present a complete defense. Lisa Brown would have been the appellant's only witness. Her testimony would have been relevant to assessing the credibility of Ms. Durant's testimony and it would have been relevant to the issue of whether Ms. Durant had any interest in or history of ingesting cocaine. We find, therefore, that the trial court abused its discretion by excluding ""Granny" as a defense witness. Appellant's fourth assignment of error is sustained in part and overruled in part.
 V
In his final assignment of error, appellant asserts that the cumulative effect of the errors committed at trial denied him his right to due process and to a fair trial. Based on this court's holding with respect to appellant's fourth assignment of error, appellant's fifth assignment of error is moot.
The Judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for a new trial.
By Edwards, J. Hoffman, P.J., concurs separately Farmer, J. dissents.