OPINION
Defendant, Michael Beckett, appeals from his conviction and sentence for the murder of Christopher Dodds.
On June 6, 1999, Christopher Dodds and Brad Miller were at a softball tournament at Municipal Stadium in Springfield. Defendant, Michael Beckett, his brother, Rick Beckett, and Rick's wife, Sarah Beckett, were there also. An argument broke out between Rick Beckett and Brad Miller. The argument was witnessed by Defendant, by Sarah Beckett, and by Sarah's friend, Dalynn Gill. After the argument, the Becketts drove off in their car.
Shortly thereafter all three Becketts returned to the game on foot. Rick Beckett and Brad Miller then began fighting. Miller testified that he saw Defendant Michael Beckett "sucker punch" Christopher Dodds. Witnesses testified that they saw a man on top of Dodds, hitting him, and that a friend of Dodds struck that man on the head with a beer bottle. Other witnesses testified that they saw a man stab Dodds and then run into some nearby trees.
One witness testified that Defendant Michael Beckett looked like the man who had stabbed Dodds. A witness who saw Defendant emerge from the trees testified that Defendant was bleeding from the forehead. Rick Beckett also testified that when he located Defendant Michael Beckett after the fight with Brad Miller, Defendant was bleeding profusely from the forehead. As Dodds was being treated by medics, Sarah Beckett told Dalynn Gill that Defendant Michael Beckett "just stabbed that kid in the neck."
Later that same day Defendant flew to Camp Pendleton in California, where he was stationed in the Marine Corps. Agents of the Naval Criminal Investigative Services interviewed Defendant at the request of Springfield police. During his second interview Defendant admitted that he was involved in an altercation with another man and may have stabbed him in the neck with a piece of glass. A DNA test of Defendant's socks revealed blood from the victim, Christopher Dodds. Some two months after the attack, Christopher Dodds died from his stab wounds., Defendant Michael Beckett was indicted in Case No. 99-CR-528 on one count of murder, purposely causing Dodds' death, in violation of R.C. 2903.02(A). Subsequently, Defendant was indicted in Case No. 00CR77 on one count of murder, causing Dodds' death as a proximate result of committing felonious assault, in violation of R.C. 2903.02(B). The two cases were consolidated for trial. Prior to trial Defendant filed a motion to suppress the statements he made to investigators. Following a hearing, the trial court overruled Defendant's motion to suppress.
A jury trial commenced on June 5, 2000, after which the jury found Defendant not guilty of murder in violation of R.C. 2903.02(A), but guilty of murder in violation of R.C. 2903.02(B). The trial court sentenced Defendant to fifteen years to life imprisonment., Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS WHEN IT REFUSED TO ORDER APPELLANT'S STATEMENTS SUPPRESSED, BECAUSE THE EVIDENCE SHOWED THAT THOSE STATEMENTS WERE INVOLUNTARY.
 The evidence presented at the suppression hearing demonstrates that atthe request of Springfield police, agents of the Naval CriminalInvestigative Services interviewed Defendant at Camp Pendleton,California, regarding the stabbing of Christopher Dodds. The firstinterview took place on June 8, 1999, and began around 4:45 p.m.
 Agent Proffitt first advised Defendant of his rights, which Defendantacknowledged that he understood and agreed to waive. Agents Proffitt andHaney then questioned Defendant for approximately four hours, from 5:00p.m. until shortly before 9:00 p.m. At that time Defendant's barrackswere searched with his permission, and articles of his clothing werecollected., Defendant was released following this first interview.Defendant had admitted during the interview that he was at the softballgame on June 6, 1999, at Springfield Municipal Stadium, and that he hadbeen drinking. Defendant stated that he didn't remember being involvedin a fight. Defendant indicated that he saw a fight break out, and whenhe tried to walk around it he was hit in the head with a beer bottle, andthen he walked home.
 A second interview of Defendant was conducted on June 14, 1999. Thisinterview lasted approximately eight hours, beginning around 1:00 p.m.and ending around 9:00 p.m. There were several breaks during thatinterview.
 Agent Proffitt once again began this interview by advising Defendant ofhis rights, which Defendant acknowledged he understood and waived.Agents Proffitt and Haney once again questioned Defendant about thestabbing of Christopher Dodds. After two and one-half hours a break wastaken. Agent Proffitt left and Agent Humenansky, who had spoken to someof Defendant's fellow marines, took over the questioning.
 During this second interview Defendant was confronted with informationobtained from his fellow marines regarding what Defendant had told themabout the incident. Defendant was also told that the victim's DNA wouldbe on his clothing. Although no tests had yet been performed onDefendant's clothing, subsequent tests did reveal the victim's blood onDefendant's socks.
 The interrogators urged Defendant to tell the truth in order to fulfillhis duties as a marine. They also told Defendant that witnessesinterviewed in Springfield had indicated that he was involved in thisincident. Eventually, Defendant admitted that he had been involved in afight with a man at the ballpark and may have jammed a sharp object,possibly glass, into that man's neck.
 Whether an accused's confession was voluntary for purposes of the FifthAmendment presents a question of law. An appellate court reviews thatissue de novo, not being bound by the trial court's judgment on the samelegal issue. The appellate court must give strong deference to the trialcourt's findings of the facts which underlie a claim of involuntariness.Here, the trial court made no findings of fact when it denied theDefendant's motion to suppress.
 While Defendant admits that he was "Mirandized" before each interviewand that he waived his rights, administration of the Miranda warnings donot foreclose a further inquiry whether a defendant's will was overborneby the subsequent interrogation that produced his confession. Dickersonv. United States, (2000), 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405.The focus of that inquiry is whether police overreaching during theinterrogation process was such as to overbear the defendant's will toresist and bring about a confession which is involuntary because it wasnot freely self-determined. Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515; 93 L.Ed. 473; State v. Edwards, (1976), 49 Ohio St.2d 31.
 A suspect's decision to waive his Fifth Amendment privilege againstself-incrimination is made voluntarily absent evidence that his will wasoverborne and his capacity for self-determination was critically impairedbecause of coercive police conduct. State v. Otte (1996),74 Ohio St.3d 555; State v. Petitjean (2000), 140 Ohio App.3d 517.Coercive police activity is a necessary predicate to finding a confessioninvoluntary within the meaning of the Due Process Clause of theFourteenth Amendment. State v. Wiles (1991), 59 Ohio St.3d 71.
 The voluntary nature of a defendant's statement is determined from thetotality of the circumstances. State v. Slagle (1992), 65 Ohio St.3d 597;State v. Treesh (2001), 90 Ohio St.3d 460. A confession is involuntaryif, on the totality of the circumstances, the defendant's will wasoverborne by the circumstances surrounding his giving of the confession.Dickerson v. United States, supra; Petitjean, supra.
The totality of the circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation.Petitjean, supra. Factors to be considered include the age, mentality andprior criminal experience of the accused; the length, intensity andfrequency of interrogation; the existence of physical deprivation ormistreatment; and the existence of threat or inducement. State v.Edwards, supra. Use of deceit by the interrogating police officers andmisrepresentations made to the suspect about the evidence police possessdo not per se render a confession involuntary. Rather, it is but onefactor bearing on voluntariness. State v. Cooey (1989), 46 Ohio St.3d 20.,Defendant argues that the totality of the circumstances surrounding hisgiving of a confession constitute coercive police conduct which overbornehis will to resist, rendering his statements involuntary. We disagree.,Defendant's primary complaint is that the interrogation sessions wereunduly long in duration. The first interview on June 8, 1999, lastedapproximately four hours. The second interview, conducted almost one weeklater on June 14, 1999, lasted eight hours. There were, however, severalbreaks taken during that interview. Defendant never exercised his rightsduring that June 14th interview by refusing to answer further questions,requesting that the interrogation cease, or asking to be provided withcounsel.
 The length of the interrogation is only one factor to consider indetermining voluntariness of a confession, Edwards, supra, andinterrogations lasting seven hours have been upheld. State v. DePew(1988), 38 Ohio St.3d 275. Additionally, although Defendant complainsthat the small, windowless interview room was cramped, there is noevidence in this record that supports a finding that Defendant wasintimidated by his surroundings., Defendant also complains because Navalinvestigators deceived him about the evidence they possessed.Investigators told Defendant that the victim's DNA would be on hisclothing. However, no such tests had yet been performed.
 Misrepresentations made to a suspect about the strength of the evidencepolice possess do not per se render a confession involuntary. Rather, itis but one factor to consider bearing upon voluntariness. State v.Cooey (1989), 46 Ohio St.3d 20, State v. Wiles (1991), 59 Ohio St.3d 71.
 Subsequent tests performed on Defendant's clothing revealed that thevictim's blood was on Defendant's socks. Though the agents were unawareof that fact when they questioned Defendant, their statements in thatregard were not misrepresentations of fact., Defendant further complainsthat the Naval investigators falsely told him that witnesses interviewedby police in Springfield indicated that he was involved in this stabbingincident. The record does not demonstrate that those representationswere false. The testimony of some of the witnesses does implicateDefendant in this crime., Defendant also asserts that it was improper forNaval investigators to admonish him to tell the truth and do the rightthing in order to fulfill his duty as a Marine. While we disapprove ofconveying to Defendant the notion that he had an obligation or duty towaive his Fifth Amendment right because as a Marine he was expected tolive up to their code of honor, general admonitions to a suspect to tellthe truth, which is what this record demonstrates, are neither threatsnor inducements and do not render a confession involuntary. State v.Loza (1994), 71 Ohio St.3d 61.
The record demonstrates that prior to each interview Defendant was fully advised of his rights, he acknowledged that he understood those rights, and he agreed to waive his rights and speak with investigators. At no time during either of Defendant's interviews did he invoke his rights to terminate the interrogation. There is no evidence that Defendant was physically restrained, threatened, abused, deprived of necessities, promised anything, or intimidated by his interrogators. On the totality of the facts and circumstances surrounding the giving of Defendant's statements, we conclude that Defendant's will to resist confessing was not overborne by coercive police conduct. Therefore, Defendant's statements to investigators were not involuntary, and the trial court properly overruled his motion to suppress those statements.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY ADMITTING A STATEMENT AS AN "EXCITED UTTERANCE" HEARSAY EXCEPTION., Defendant argues that the trial court abused its discretion when it admitted, over his objection, hearsay evidence of a statement made by his sister-in-law, Sarah Beckett, shortly after the stabbing occurred that "Mike just stabbed that kid in the neck." The trial court admitted this statement under the excited utterance exception to the hearsay rule, pursuant to Evid.R. 803(2).
 Generally, the admission or exclusion of evidence is a matter restingwithin the trial court's sound discretion, and its decision in suchmatters will not be disturbed on appeal absent an abuse of discretion.State v. Sage (1987), 31 Ohio St.3d 173. An abuse of discretion connotesmore than a mere error of law or an error in judgment. It implies anarbitrary, unreasonable, unconscionable attitude on the part of the trialcourt. State v. Adams (1980), 62 Ohio St.2d 151.
Evid.R. 803(2), which codifies the common law hearsay exception for spontaneous exclamations, provides:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
In State v. Duncan (1978), 53 Ohio St.2d 215, the Ohio Supreme Courtdiscussed the requirements for admitting a statement under this hearsayexception:
 Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. (Paragraph two of the syllabus in Potter v. Baker, 162 Ohio St. 488, 124 N.E.2d 140, approved and followed.)
Syllabus.
Dalynn Gill testified at trial that she was at the softball game and had been in the company of the Becketts, but left before the stabbing occurred. When Gill heard about the stabbing she immediately returned to the softball field. Upon arrival, Gill observed paramedics loading Christopher Dodds into the ambulance. A short distance away Gill encountered Sarah Beckett, Defendant's sister-in-law. Gill testified that Sarah Beckett was hysterical, shaking and crying, and could barely stand up. Beckett had blood on her shirt. When Gill asked Sarah Beckett what had happened, Beckett kept repeating, "Mike just stabbed that kid in the neck." When Gill asked "with what," Beckett responded over and over, "with his fist." As she said this Sarah Beckett repeatedly gestured with her hand, making a downward stabbing motion., Defendant argues that Sarah Beckett's statement does not qualify for admission as an excited utterance because the evidence is insufficient to demonstrate that Beckett personally observed the startling event she related in her statement. We disagree.
The evidence presented at trial demonstrates that prior to the stabbing Sarah Beckett was at the softball field where the stabbing occurred with Defendant and her husband. Shortly after the stabbing occurred, while medics were still tending to the victim, Sarah Beckett was at the scene. She had blood on her clothing and she was hysterical, crying, shaking, and barely able to stand. The intensity of Sarah Beckett's emotional state strongly suggests that she had just witnessed a startling event. Moreover, as Sarah Beckett was explaining to Dalynn Gill what had happened, saying "Mike just stabbed that kid in the neck", she repeatedly gestured with her hand, making a downward stabbing motion. This clearly implies that Sarah Beckett observed the conduct which her verbal declaration described.
This evidence is sufficient to meet the requirements for admitting Sarah Beckett's statement as an excited utterance, including the requirement that the declarant have an opportunity to personally observe the matters asserted in his or her statement. The trial court did not abuse its discretion in admitting this evidence.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.