THE STATE OF OHIO, APPELLEE, *v.* EDWARDS, APPELLANT.

[Cite as State v. Edwards (1976), 49 Ohio St. 2d 31.]

(No. 76-38—Decided December 29, 1976.)

*Mr. Stephan M. Gabalac*, prosecuting attorney, and *Mr. Carl M. Layman, III*, for appellee.

*Messrs. Chuparkoff, Lombardi & Reed* and *Mr. Ted Chuparkoff*, for appellant.

O'NEILL, C. J. Appellant presents 12 assignments of error (hereinafter referred to as "propositions of law").

### I.

In his fourth proposition of law, appellant contends that the trial court erred in finding that the state had presented sufficient evidence to show the commission of an

aggravated robbery prior to the admission of the appellant's confession to that offense.

The relevant rule of law is found in *State* v. *Maranda* (1916), 94 Ohio St. 364, 114 N. E. 1038, as follows:

"1. By the *corpus delicti* of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act.

"2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession tending to establish the *corpus delicti*, before such confession is admissible. The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. * * *"

Under count two of the indictment, the material elements of aggravated robbery relevant herein include the following: (1) without the owner's consent, to obtain or exert control over the owner's property, (2) a purpose to deprive the owner of his property, and (3) the defendant in the commission of the act or in fleeing immediately thereafter, either to have on or about his person or under his control a deadly weapon or dangerous ordnance as defined in R. C. 2923.11, or to inflict serious physical harm on another.

The defendant contends that "there is absolutely no evidence offered by the state that anything of value was ever taken from the decedent." If not, the argument continues, excluding Edward's confessions, "there was no evidence from which it can be said by clear and unequivocal proof that decedent was killed in the course of a robbery." The defendant concludes that there was insufficient evidence to prove that an aggravated robbery was committed, for the following reasons: (1) the fact that the defendant was found without a wallet, when no evidence was presented that he even carried a wallet, cannot be said to be circumstantial evidence he was robbed, especially when it was discovered that the decedent did have money on his per-

son, (2) the fact that a wallet was later found containing the decedent's identification cards does not show the wallet was owned by the decedent, and (3) the evidence was not clear whether defendant was seen in the vicinity of the wallet before or after the decedent was found.

In rebuttal, the state emphasizes paragraph two of the syllabus in *Maranda, supra.* In order to make Edwards' confession admissible, the state need only produce *some* evidence of the material elements listed above. "The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case." *Maranda, supra.*

In the instant case, a few days following decedent's death a wallet was found in the basement of an apartment complex. The billfold contained some credit cards, identification papers and miscellaneous papers of the decedent, but no money. Considering those facts, the state concludes that sufficient evidence existed to establish the *corpus delicti* of aggravated robbery.

The necessity of independently proving the *corpus delicti* to render admissible an extrajudicial confession is a well-established rule of evidence. Its origin is explained by Judge Wanamaker in *State* v. *Maranda, supra,* at page 370, as follows:

"This doctrine touching *corpus delicti* is of ancient origin and was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of a failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer. Therefore, the rule that there must be some evidence tending to prove the fact that death had actually ensued; which was later followed by an additional requirement of some evidence that that death was brought about by some criminal agency."

Considering the revolution in criminal law of the

1960's and the vast number of procedural safeguards protecting the due-process rights of criminal defendants, the *corpus delicti* rule is supported by few practical or social-policy considerations. This court sees little reason to apply the rule with a dogmatic vengeance.

In considering the minimal requirements of *Maranda* and in evaluating the evidence in light of the ordinary customs of our times, we conclude that the prosecution did produce *some* evidence tending to corroborate the material elements of aggravated robbery.

This proposition of law is not well taken.

## II.

Taking the remaining propositions of law in their numerical sequence, we find in proposition of law No. 1 the claim that the trial court erred in "allow[ing] the prosecutor to receive a copy of a psychiatric examination prior to the trial and conviction of the defendant."

After the defendant entered a not guilty plea, the trial court ordered a psychiatric evaluation of the defendant. During the examination, the defendant made several incriminating statements relating to his participation in the robbery and murder. A copy of this report was then given to the prosecutor.

Although the record is not clear, the trial court apparently ordered the examination to determine whether the defendant was competent to stand trial. Under R. C. 2945.37, such an order was proper. However, the court erred, the defendant alleges, in allowing the prosecution to receive a copy of the report before the defendant was tried and convicted. The defendant claims the error to have been prejudicial. At trial, testimony was offered by the state from detective Cross that Edwards slept in a basement of Edgewood Home Apartments. The testimony, the defendant claims, was critically important in proving that Edwards was known to sleep where the wallet was found. Defendant further insists that detective Cross obtained this information from the psychiatric report. Without such testimony, the defendant continues, there would have been

insufficient evidence to render the defendant's confession admissible. And without the confession, he concludes, there was insufficient evidence to support the jury's verdict.

The state, in rebuttal, argues that the psychiatric report contained no evidence that had not already been uncovered by the police. The officers were aware of Gary Hendon, the custodian who found the billfold. The report, moreover, was never referred to in the presence of the jury or introduced in evidence.

The issue is whether the disclosure of the psychiatric report to the prosecutor, prior to trial, violated the defendant's right against self-incrimination. Although this claim presents significant constitutional questions, it need not be addressed by this court. In light of the facts of the case, defendant's argument is significant only if one assumes that without Cross' testimony the defendant's confession would be inadmissible. Having arrived at the contrary conclusion in the analysis of the appellant's fourth proposition of law, the court need not resolve this argument.

This proposition of law is rejected.

### III.

In his second proposition of law, appellant complains that "[t]he mere reading of the *Miranda* rights to the accused who purports to understand them and then purportedly waives his right to remain silent is not in compliance with the law."

On January 9, 1975, the defendant was arrested at 5:30 p. m. From approximately that time to 3:00 a. m. on January 10, 1975, the defendant was kept in interrogation room No. 9. During that period he was interrogated four times; three of the four interrogations were tape-recorded. The appellant challenges the admissibility of the confessions obtained during these interrogation periods. Since the original statement given to the police established his participation in the crime, only the circumstances of this confession are legally significant. If the confession was voluntarily made, then the legality of the later statements, obtained at 8:20 p. m. and 10:25 p. m., respectively, is not

important. If the subsequent confessions were legally obtained, then their admission relates to events already proven. If the subsequent confessions were illegally acquired, in light of the lawfulness of the original statement given to the police shortly after the appellant's arrest, then their admission constitutes harmless error. *Harrington* v. *California* (1969), 395 U. S. 250; *Chapman* v. *California* (1967), 386 U. S. 18.

Having been in custody for about an hour following his arrest, on January 9, 1975, the defendant was interrogated by detective Cross. Before questioning the defendant, Cross read to the defendant his *Miranda* warnings. After having read each right aloud, Cross asked the defendant if he understood. The defendant said "yes." After reading the *Miranda* warnings, Cross told the defendant that he could stop talking to either himself (Cross) or detective Goodwell any time he wished. At approximately 6:30 p. m., the defendant gave an oral, unrecorded confession.

In *Miranda* v. *Arizona* (1966), 384 U. S. 436, the Supreme Court held that the prosecution has the burden of proving the following facts in order for a statement made by an accused at the time of custodial interrogation to be admitted in evidence: (1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made "an express statement" that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights.

There are no presumptions to aid the prosecution in its attempt to prove a valid waiver of the right to counsel and the privilege of silence. At various points in the majority opinion in *Miranda,* the court seizes upon specific factual criteria which it emphatically indicates will not support a presumption of waiver. These criteria are: (1) a waiver will not be presumed simply from the silence of the accused after the warnings are given; (2) a waiver will not be presumed simply from the fact that a confession was

in fact eventually obtained; (3) a waiver will not be presumed if the individual answers some questions or gives some information on his own initiative prior to invoking his right to remain silent when interrogated; (4) a waiver will not be presumed if the accused fails to ask for the assistance of an attorney; and (5) a waiver will not be presumed from a silent record.

The defendant argues his confession is inadmissible for basically the following three reasons: (1) The *Miranda* warnings were inadequate in that Cross never explicitly asked the defendant whether he wanted an attorney; (2) the waiver was not intelligently made because defendant had a low IQ and could only read on a second-grade level; and (3) the waiver was not voluntarily made in that officer Goodwell "induced" the defendant to confess by telling the defendant the court would be lenient on him, if the defendant told the truth.

*Miranda* does not require a police officer to ask the defendant whether he wants an attorney. He need only inform the accused, as was done here, that the accused has a right to a retained or appointed attorney. Moreover, the defendant was 21 years old, a high school graduate, and able to understand the English language. In being asked whether he understood his rights, he responded affirmatively. He never asked for an attorney.

The only significant issue is whether the defendant's waiver was voluntary in light of Cross' "inducement."

*Miranda* specifically holds that "any evidence" showing that the accused was "cajoled" will render the waiver decision involuntary. *Miranda* v. *Arizona, supra* (384 U. S. 436), at page 476. "Cajolery," in this context, may be defined as the act of persuading or deceiving the accused, with false promises or information, into relinquishing his rights and responding to questions posed by law enforcement officers.

In demanding that a confession be voluntary, *Miranda* was requiring nothing new. The Supreme Court of the United States had established such to be the law in *Bram*

v. *United States* (1897), 168 U. S. 532, 542, as follows:

" '* * * [A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by *any direct or implied promises, however slight,* nor by exertion of any improper influence * * *.' "

Although the language of *Bram* is categorical, it is doubtful whether the courts today would interpret the *Miranda* requirements so that any promise, "however slight" which induces a confession would render the confession involuntary and hence inadmissible. Thus in *United States* v. *Ferrara* (C. A. 2, 1967), 377 F. 2d 16, 17, certiorari denied, 389 U. S. 908, the Court of Appeals stated:

"* * * The *Bram* opinion cites with approval the statement in an English textbook that a confession is not voluntary if 'obtained by any direct or implied promises, however slight.' That language has never been applied with the wooden literalness urged upon us by appellant. The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined * * *.' "

"The 'wooden' application of *Bram* was also rejected in *United States* v. *Frazier,* 434 F. 2d 994 (5th Cir. 1970). In *Frazier,* an F. B. I. agent told defendant 'that if he cooperated with them his cooperation would be made known to the United States Attorney, that there might be some consideration given by the United States Attorney but that the agents could make no promises.' The court held such a promise, standing alone, insufficient to render the confession involuntary." *United States* v. *Arcediano* (1974), 371 F. Supp. 457, 469.

In deciding whether the defendant's confession in this case was involuntarily induced, the court should consider the *totality* of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length,

intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *Brown* v. *United States* (C. A. 10, 1966), 356 F. 2d 230, 232. Under the "totality of circumstances" standard, the presence of promises does not, as a matter of law, render a confession involuntary. In *United States* v. *Stegmaier* (1975), 397 F. Supp. 611, an F. B. I. agent's promise that the defendant's "cooperation" would be considered in the disposition of the defendant's case did not render the subsequent confession involuntary. In *United States* v. *Barfield* (1975), 507 F. 2d 53, the court held that the fact that a 16-year-old defendant was told by an F. B. I. agent that it would be in "his best interest" to tell the "real story," and that telling a lie might result in his being left "holding the bag," did not foreclose, as a matter of law, the voluntariness of the confession. In *United States* v. *White* (C. A. 5, 1974), 493 F. 2d 3, the court held that in an otherwise noncoercive atmosphere, an isolated statement made to an accused that his confession would be "helpful," did not, standing alone, invalidate an otherwise legal confession.

The trial court did not find officer Goodwell's statement to be of such a nature as to render involuntary the appellant's confession. We believe this to be correct. To promise that the court will be "lenient" if one tells the truth is not unlike an admonition that it would be in one's "best interest" to tell the truth and not get caught "holding the bag." *Barfield, supra.* The accused in the instant case had been given his rights and was of majority age. The defendant, at the time of his first confession, had been in custody for approximately one hour. The atmosphere was noncoercive and the questioning had not been continuous. There was no physical deprivation or mistreatment. The record supports the finding that the defendant voluntarily waived his constitutional rights.

## IV.

Proposition of law No. 3 reads: "Criminal Rule 16(B) [1](e) is a mandatory rule which requires strict compli-

ance. Rule 16(E)(3) applies only to the introduction of physical evidence. The trial court abuses its discretion if it permits a witness to testify whose name was not on the witness list by mere neglect.'' Appellant complains that the trial court erred in permitting a state's witness to testify when the state, in violation of an earlier court order, failed to furnish the name and address of the witness prior to trial.

Crim. R. 16(E)(3) provides for the regulation of discovery, and it permits the trial court to exercise its discretion in selecting the proper and just procedure to be followed when a party fails to comply with a discovery order. Crim. R. 16(B)(1)(e) provides for the furnishing of the names and addresses of all witnesses the prosecution intends to call at trial. In the instant case, the prosecution called officer Ronald Davis whose name did not appear on the list of names furnished by the prosecution to the defendant pursuant to a motion filed by the defendant requesting the names and addresses of all witnesses. Over objection by the defendant, the court permitted Davis to testify as to the position in which he found the decedent and the location of a shell casing, and to identify state's exhibits numbered 4 through 10. The issue is whether the trial court abused its discretion in admitting the testimony.

Because trial courts are given much latitude in supervising pretrial discovery, we conclude that the lower court did not abuse its discretion in allowing Davis to testify. From the record, it appears the prosecutor's mistake was inadvertent. Moreover, there is little reason to believe the appellant was ill-prepared and surprised by Davis' testimony. Although the witness list was incomplete, it did include the name of Mack Newberry, the partner of Ronald Davis, who accompanied him on his tour of duty. It was the intention of the state to call Newberry as its first witness, but a heart attack the night before trial precluded his appearance, and Davis was called in his stead. Moreover, much of Davis' testimony was identical to that of the coroner's investigator, Charles Elliot. Furthermore,

although the trial court overruled defense counsel's objection to Davis' testimony in its entirety, defense counsel could have, but did not, move for a continuance in order to have sufficient time in which to prepare for cross-examination. In the absence of such a motion, the trial court properly concluded that defense counsel was prepared to go forward at that time. The trial court had, pursuant to Crim. R. 16(E)(3), the discretionary power to make such a determination.

This proposition of law is not well taken.

## V.

In his fifth proposition of law, appellant suggests that the trial court erred in permitting in evidence the tape recording of the defendant's confession with reference to the killing of the decedent. Appellant asserts that "[t]he total recorded confession by the defendant was a confession of aggravated robbery and aggravated murder and that the statement of both offenses could not be separated." As advanced by the appellant's fourth proposition of law, the statement with reference to the robbery should not have been permitted for the reason that the state failed to prove any facts, other than by the defendant's confession, that a robbery was committed. Hence, since the two statements could not be separated, both should be prohibited from being introduced in evidence.

In appraising this proposition, this court is of the opinion that the tape-recorded confessions were admissible in evidence for the reasons advanced in our ruling on proposition of law No. 4.

## VI.

The next proposition of law advanced by appellant, No. 6, proposes that the Criminal Rules do not preclude the defendant's counsel, in final argument, from commenting to the jury that the state failed to call certain witnesses, when the state was responsible for bringing their names to the attention of the jury, after the court allowed the state to introduce hearsay testimony over objection.

Throughout the testimony of detective Cross, the state

introduced hearsay testimony of Haywood Manning and
Butch DeBruce. The state brought the names of these
people to the attention of the jury. The court, however,
refused to allow defense counsel to mention the name
Manning in final argument. In so doing, the appellant ar-
gues, the lower court erred.

Aside from Edward's confession and the statements
attributed to DeBruce, Manning's testimony and credibil-
ity were relevant in connecting Edwards with the murder
weapon. Since Manning was never called to the stand, the
defendant argues that he should have been able to men-
tion such fact to the jury. Relying on Crim. R. 16(B)(4),
the court made a limited ruling. It held that the defense
could give any number of arguments, but could not im-
peach Manning's statements by mentioning the prosecu-
tor's failure to call him as a witness.

Crim. R. 16(B)(4) provides:

"The fact that a witness' name is on a list furnished
under subsection (B)(1)(b) and (f), and that such wit-
ness is not called shall not be commented upon at trial."

Considering the purpose of the rule and the availabil-
ity of Manning as a witness throughout the trial, we be-
lieve the trial court was correct in ruling that the defense
could not argue before the jury, "[W]here is Mr. Man-
ning?" A party is not required to use every prospective
witness it may have. Once the prosecution has established
its case, it may rest at the point it chooses. The rule effec-
tively precludes the defense raising doubt or innuendo
about an uncalled witness, and what he might say. The rec-
ord shows, incidentally, that Manning was interviewed by
defense counsel in the discovery stages of the trial.

### VII.

Proposition of law No. 7 reads: "Ohio Revised Code
2911.01 is unconstitutional for the reason that it is ambigu-
ous, vague and does not specifically recite an offense."

The lower court properly held that R. C. 2911.01,
when read in light of R. C. 2913.02, is not ambiguous or
vague.

## VIII.

In proposition of law No. 8, applicant pleads error as follows:

"It is prejudicial error to instruct the jury that the purpose to kill *must* be inferred from the use of a deadly weapon."

While instructing the jury about the law, the trial court said the following:

"It must be established in this case that at the time in question there was present in the mind of the defendant a specific intent to kill Joseph Eshack, Jr.

"Now, purpose is the decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.

"The purpose with which a person does an act is known only to himself unless he expresses it to another or indicates it by his conduct. The purpose with which a person does an act is determined from the manner in which it is done, the means and method and the weapon used, and all other facts and circumstances in evidence.

"If a wound is inflicted upon a person with a deadly weapon *in a manner calculated to destroy life,* the purpose to kill *must* be inferred from the use of said weapon. Both an inference of malice may be inferred from the facts and circumstances of an unlawful killing where a deadly weapon is used." (Emphasis added.)

The defendant argues that the use of a dangerous weapon is not *conclusive* proof of an intent to kill, and that the jury must be free to decide whether the actual intent was to wound or disable, or whether the killing was purely accidental.

In reading the court's instructions to the jury in their entirety, this court does not believe the above instruction to have constituted prejudicial error. Having made such a decision, the court does not need to consider the significance of the defendant's failure to object to the charge or request a correction.

This proposition of law is without merit.

### IX.

As his proposition of law No. 9, appellant contends that "[t]he Ohio statutes with reference to aggravated murder, a capital offense, and the related sections dealing with death in the electric chair are unconstitutional for the reason that the mitigating circumstances of mental deficiency has no definition in law, is vague, ambiguous and impossible to ascertain with any degree of uniformity."

This argument has already been considered and rejected by this court in *State* v. *Black* (1976), 48 Ohio St. 2d 262, 358 N. E. 2d 551.

### X.

Proposition of law No. 10 reads:

"The Ohio statute with reference to aggravated murder and related sections dealing with death in the electric chair are unconstitutional for the reason that they do not assure the defendant the equal protection of the law."

This argument is without merit. *State* v. *Bayless,* *supra.*

### XI.

As his proposition of law No. 11, appellant pleads error as follows: "It is reversible error to request a psychiatrist to make the ultimate legal conclusion as to whether the offense was primarily the product of the offender's mental deficiency."

In a letter to Dr. Elliot Migdal, contained in the record, the court instructed him that the legal definition of mental deficiency is "whether or not the offense was primarily the product of the offender's (Floyd Edwards) psychosis or mental deficiency, though such condition is insufficient to establish the defense of insanity." The letter merely repeated the statutory language regarding mitigation. The psychiatrist did not decide the ultimate legal issue of mitigation. He merely provided information in that regard. The trial court was not restricted by the doctor's testimony, nor was he constrained to accept it. The trial court,

not the psychiatrist, made the determination that no mitigating circumstances existed.

This proposition of law is not well taken.

## XII.

In his final proposition of law, appellant pleads error as follows:

"When the medical testimony is that the defendant, because of his mentality, could not be expected to form the same good judgment as a normal person, especially under stress, a finding that the offense was not the product of the accused's mental deficiency is manifestly against the weight of the evidence."

There is evidence indicating that the defendant was below average in intelligence. However, expert testimony indicated that he was not mentally deficient or retarded. He was a graduate of one of the local high schools. Despite this fact, there is evidence that he was educationally deficient. However, educational deficiency does not equate with mental deficiency.

In criminal appeals, this court will not retry issues of fact. In the circumstances at hand, we confine our consideration to a determination of whether there is sufficient substantial evidence to support the verdict rendered. From the evidence before it, the trial court had more than sufficient evidence to support its judgment. *State* v. *Cliff* (1969), 19 Ohio St. 2d 31, 249 N. E. 2d 823.

This proposition of law is not well taken.

Accordingly, for the reasons stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.