**In the matter of Jamaine Montford**
*[Cite as 6 AOA 45]*

*Case No. 15-90-3*
*Van Wert County, (3rd)*
*Decided August 9, 1990*

*Kevin Taylor, Assistant Prosecutor, 120 West Main Street, Van Wert, Ohio 45891, for Appellee.*

*Eva J. Yarger, Attorney at Law, 113 N. Washington Street, Van Wert, Ohio 45891, for Appellant.*

GUERNSEY, J.

This is an appeal by Jamaine Montford from a judgment of the Juvenile Division, Court of Common Pleas of Van Wert County determining him to be a delinquent child on the basis of an amended complaint charging him with knowing possession of a controlled substance, cocaine, in an amount equal to, or exceeding three times the bulk amount, and committing him to the legal custody of the Department of Youth Services for institutionalization for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed his attainment of the age of twenty-one.

The sole assignment of error is that of the trial court in holding the taped statement of the alleged delinquent child to be voluntary and admissible.

The child was born on May 25, 1974, and was 15 years and almost seven months old on January 11, 1990, the time of the events in question. Appellant's brief asserts that the "issue in this case comes squarely down to whether a boy of 15, several hundred miles away from all that is familiar, confronted with up to 5 hours of captivity, under arrest in a sheriff's office, surrounded only by strange adults, in uniform, can be said to have voluntarily waived his constitutional rights and voluntarily confessed."

The record shows that prior to trial a motion to suppress the taped statement was heard and overruled by the court, being the same judge who thereafter tried the delinquency charge without the intervention of a jury. At trial defense counsel objected to the playing of the tape to the court, her objection being overruled and the tape though of poor sound quality being then played. The deputy sheriff who interviewed the child on the tape testified without objection as to its content. Montford had been apprehended at a truck stop near Van Wert, Ohio, in the company of three black males when a deputy sheriff was investigating the ownership of an unlicensed van parked at the gas pumps at the truck stop. During the investigation two black females departed the truck stop in another car and were apprehended by another deputy. All six persons were removed to the sheriff's office and the vehicle in which the women were found was later searched pursuant to search warrant. A gun and more than ten times the bulk amount of cocaine were found in its trunk. The deputy sheriff who conducted the taped interview testified, among other things, at trial:

"Mr. Montford related to me that he had went to Cincinnati, Ohio [from Detroit] with June Jackson and some of the rest of the group, while in Cincinnati, Ohio uh ...some of the group got arrested... was put in incarceration down there. They had left Cincinnati in the blue Aries [the car in which the cocaine was found] uh...with he being in that car with June Jackson and... uh Marie Montford [sic]. Larry Jackson, Joe Hallen and uh... Frankie LaSalle was in the van. They arrived at Van Wert, Ohio where they would've been stopped in route to Fort Wayne, Indiana at which time they were in route to sell drugs. Uh... Jamaine advised me that he did know the drugs uh...was in the trunk. In fact, he told me at one point he thought there was around three ounces of cocaine in the trunk. Uh... he stated that he had been working for June Jackson for a period of time. She would pay him around Four Hundred Dollars per trip to haul drugs from Detroit to Cincinnati. Uh... he had about Six Hundred Dollars at his uh... at his house in Detroit, Michigan uh...he thought his mother might know that he was dealing drugs or involved in some type of drugs. As to the new clothes that he would have...that they didn't have the money. He also told me his mother would not take any of the money, because it was known as bad money. Uh...That's about it."

Obviously the statements made by Montford to the deputy and recorded on tape were inculpatory connecting him to the possession of the cocaine seized from the car. The question then remains whether the statements were voluntarily made by Montford so as to be admissible in evidence. The leading current Ohio case on the specific issue involved is *In re Watson* (1989), 47 Ohio St.3d 86, where the Supreme Court held:

"1. In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length intensity, and frequency of interrogation; and the existence of physical deprivation or inducement. *(State v. Edwards* [1976], 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, approved and followed.)"

In *Watson* the Supreme Court rejected application of the proposed "independent advice/interested adult standard" adopted by some other jurisdictions. It stated that it is not the law that any confession made by a juvenile is involuntary unless one of his parents or his attorney is present, and further stated that given the standard set forth in the syllabus, the trial court can properly determine whether the juvenile appreciated his rights and voluntarily waived them in the absence of an interested adult or parent.

The evidence at the suppression hearing shows that Montford's questioning was delayed at the sheriff's office only by the necessity of first questioning the two women involved, that the delay was not a delay of five hours but probably not more than two or three hours, that Montford was informed of his rights or read them on at least two occasions prior to making his statement and sought no attorney or other confidant, that he is no stranger to the criminal justice system being on probation in Wayne County, Michigan, for felony charges, that the deputy conducting the interview determined first his ability to read and understand which ability was further confirmed by a series of seven questions which Montford read and answered appropriately, that the deputy then read the advisement of rights form to Montford and confirmed his understanding of same before the interview, which lasted "about fifteen or twenty minutes." Although the deputy testified that Montford was shaken and that at one point in time he appeared as if he might cry, he did not, in fact, do so, that he appeared composed, you could understand him, he was talking and the deputy thought he understood completely what was going on.

From the testimony of the officers at the suppression hearing, as well as from the age and academic background of the appellant, we conclude that under the totality of the circumstances the trial court did not err in determining that the statements made on tape to the deputy were voluntary, nor did it err in overruling appellant's motion to suppress, or in admitting such evidence at trial.

Although, it does not appear that the statements, as such, were in evidence at the suppression hearing it might well be noted from the testimony of the deputy as to such statements at trial, that the juvenile appellant was knowledgeable and experienced beyond his years and was not a mere callow and inexperienced youth of tender years.

Having found no error of the trial court prejudicial to the appellant in the particulars assigned the judgment must be affirmed.

*Judgment affirmed.*

BRYANT, P.J., and MILLER, J., concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.