[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Donte Cammon was charged with four counts of aggravated robbery in violation of R.C. 2911.01(A)(1) and two counts of felonious assault in violation of R.C. 2903.11(A)(2). All six counts included both one-and three-year firearm specifications. Following a jury trial, Cammon was convicted of all six counts and the three-year firearm specification for each count. The trial court sentenced Cammon to a total of twenty years' incarceration. Cammon now appeals his convictions, asserting two assignments of error. We find neither assignment well taken.
In his first assignment of error, Cammon argues that the trial court erred in overruling his motion to suppress the taped statements he had made to the police after his arrest. He contends that he was promised more lenient treatment if he confessed, which made his confession involuntary. He also contends that he did not waive his Miranda rights before making the confession. The trial court found that Cammon had voluntarily waived his Miranda rights before making his confession and that there was no evidence of improper inducement by the police. We agree with the trial court.
Miranda v. Arizona mandates that all individuals who are taken into police custody must be advised of certain constitutional rights.[1]
Those rights can be waived prior to interrogation, provided that the waiver is voluntary, intelligent, and knowing.[2] If an accused knowingly and intelligently waives his right to counsel, the state must still demonstrate that the confession was voluntary by a preponderance of the evidence.[3]
To determine if a confession was involuntarily induced, a court must look at the totality of the circumstances surrounding the confession. This includes the accused's age, mentality, and prior criminal experience; the length, intensity, and frequency of the interrogation; any deprivation or mistreatment of the accused; and the investigators' threats or inducements.[4] Promises that a defendant's cooperation will be considered in the disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession.[5] To invalidate the confession, there must be evidence of police coercion or overreaching such that the accused's will was overborne.[6]
We first address Cammon's contention that he did not knowingly or intelligently waive his Miranda rights prior to confessing his involvement in the crimes. The record shows that police advised Cammon of his Miranda rights three times prior to his confession. Cammon was initially informed of his Miranda rights after his arrest. Cincinnati police officer Dennis Ficker testified that he read Cammon his Miranda
rights a second time from a printed "notification of rights" form prior to his interrogation. Cammon told Officer Ficker that he understood his rights and signed the form. In his taped statement to police, Cammon again acknowledged being read the "notification of rights" form, understanding the contents of the form, and signing the form. Thus, the evidence supports the trial court's finding that Cammon was properly advised of his Miranda rights and that he intelligently and knowingly waived those rights prior to admitting his involvement in the robberies.
The testimony at the suppression hearing also supports the trial court's finding that Cammon's taped confession was voluntary. Nothing in the record, besides Cammon's own testimony, supports his argument that Officer Ficker promised him a one-year firearm specification in exchange for waiving his Miranda rights. Officer Ficker testified that, during the interrogation, he informed Cammon of the severity of the charges he faced, including the possibility of firearm specifications for each charge. Officer Ficker also informed Cammon of the potential prison term for each charge, including the firearm specifications. Having reviewed the record, we cannot conclude that the trial court erred in finding that the police did not obtain Cammon's confession by any direct or implied promises.[7] As a result, we overrule his first assignment of error.
In his second assignment of error, Cammon challenges his convictions for aggravated robbery and felonious assault on both the sufficiency and the weight of the evidence. Cammon claims that the state did not present sufficient evidence linking him to the four aggravated robberies and the two felonious assaults, because none of the victims directly identified him as the perpetrator of the crimes, and because the witnesses presented conflicting testimony as to the color of the vehicle used in the crimes. We disagree.
At trial, the prosecution presented evidence that Cammon had borrowed a truck and with several companions set out to rob people on the street. He brought along a .25-caliber handgun that he had purchased two days earlier. Cammon and his friends first robbed two teenage boys in Fairmount, a section of Cincinnati. Cammon admitted holding the gun in one of the boy's faces and robbing him.
Cammon and his friends then attempted to rob two young men in another part of Cincinnati. These men refused to give Cammon and his companions anything. When the two men ran away from the truck, shots were fired at them. The men saw a police car, told the officers what had happened, and pointed out the truck occupied by Cammon.
When the officers approached the truck to investigate, it drove away. A shot was fired from the truck at the officers, and the gun was thrown out the truck's window. Two of Cammon's companions were later arrested, and they gave the police Cammon's identity. After Cammon was arrested, he gave the police a taped statement in which he confessed to the four robberies, but denied shooting at the police officers. Cammon claimed that the gun had discharged when it was thrown from the vehicle. To counter Cammon's taped statement about the gun, the state introduced testimony from a ballistics expert and Cammon's cellmate. The ballistics expert testified that the gun could not have discharged when it was thrown from the truck's window. Cammon's cellmate testified that Cammon had bragged to him about the crimes, as well as his plan to claim that the gun discharged when thrown from the vehicle.
In viewing the evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could have found that the state had sufficiently proved the elements of aggravated robbery and felonious assault beyond a reasonable doubt.[8] With respect to the aggravated-robbery charges, the state presented sufficient evidence through the victims' testimony, the photographs of the truck, and other physical evidence to establish that Cammon had committed the robberies. The prosecution's strongest evidence was Cammon's own taped statement in which he confessed to the four robberies. As for the felonious-assault charges, there was sufficient testimony from the two police officers, Cammon's cellmate, and a ballistics expert to show that Cammon had knowingly attempted to cause physical harm to the police officers by means of a deadly weapon.
We also reject Cammon's contention that his convictions were against the weight of the evidence. A jury is free to believe all, part, or none of any witness's testimony.[9] Here the jury chose to believe the testimony of the state's witnesses and Cammon's own taped statement, instead of Cammon's trial testimony denying his involvement in the crimes. Thus, after reviewing the entire record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Cammon's convictions and order a new trial.[10]
Accordingly, we overrule Cammon's second assignment of error. We, therefore, affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Sundermann, JJ.
[1] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] See id. at 444, 86 S.Ct. at 1612.
[3] See State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147.
[4] See id. at paragraph two of the syllabus.
[5] See State v. Loza (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082.
[6] Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515.
[7] See State v. Otte (1996), 74 Ohio St.3d 555, 562, 660 N.E.2d 711,719; State v. Arrington (1984), 14 Ohio App.3d 111, 114, 470 N.E.2d 211,215.
[8] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[9] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.
[10] See Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211; Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547.