DECISION.
{¶ 1} Defendant-appellant Ray Enfinger appeals the trial court's judgment convicting him, following a jury trial, of murder. He asserts three assignments of error. Because each assignment lacks merit, we affirm the trial court's judgment.
 {¶ 2} The record indicates that on the evening of June 23, 2001, Enfinger drove his friend Doug Warren to a party in Ross, Ohio. At the party, Enfinger and Warren met the victim, Timothy Mills. All three had been drinking, and the record indicates that Enfinger may have been smoking marijuana. After the party, Enfinger drove Warren and Mills to the home of Kenny Jones and picked up Marcus Berry, who was living with Jones. While all four were driving around in Enfinger's new car, Mills vomited in the backseat. This upset Enfinger, so he stopped the car and demanded that Mills get out. A fistfight then ensued between Enfinger and Mills. After the fight, Enfinger, Warren and Berry drove back to Jones's home, leaving Mills lying on the side of the road.
 {¶ 3} According to Enfinger's taped statement to police officers, he and Berry drove back to where they had left Mills after spending some time at Jones's home. Enfinger stated that when they returned, Mills walked over to his car and said "something." Enfinger then got out of the car and began hitting and kicking Mills until he fell down. Enfinger then got back in his car and told Berry, "Watch this. This is how you do it the gangster way." Enfinger stated that he then "drove over [Mills]." As a result, Mills suffered a lacerated liver. He died seven weeks later at University Hospital.
 {¶ 4} The main issue at trial was whether Enfinger had intentionally run over Mills. Berry testified at trial on cross-examination that Enfinger had not intended to hit Mills with his car, but, in his statements to the police, he had said that Enfinger had asked him, "You guys want to see me run him over?" Additionally, Berry gave the following testimony:
 {¶ 5} "Prosecutor: And what did Ray Enfinger say after you told him not to run over Tim Mills?
 {¶ 6} "Berry: Fuck it.
 {¶ 7} "Prosecutor: What did he then do?
 {¶ 8} "Berry: (No response.)
 {¶ 9} "Prosecutor: What did Ray Enfinger then do?
 {¶ 10} "Berry: Went over him.
 {¶ 11} "Prosecutor: What do you mean: he went over him?
 {¶ 12} "Berry: He drove the car and went over him.
 {¶ 13} "Prosecutor: You said, "No." Ray tells you: Fuck it, and drove and ran the dude over; that's what you said?
 {¶ 14} "Berry: Yes."
 {¶ 15} At trial, Jones testified that when Berry and Enfinger came back to his home, Enfinger told him that "he had run the kid over."
 {¶ 16} In his first assignment of error, Enfinger asserts that the trial court erred in denying his motion to suppress his statements. In support of this assignment, Enfinger argues that his statements to investigating officers should have been suppressed because the officers only tape-recorded his statements after they had conducted a preliminary interview that was not recorded. Enfinger asks this court to hold that conducting a preliminary interview prior to tape-recording a witness's or a suspect's statement is a coercive interrogation technique when the officers have the ability to tape-record the entire interrogation. We decline to do so.
 {¶ 17} The testimony at trial from the investigating officers indicated that they conducted preliminary interviews to help witnesses or suspects focus their statements. Specifically, Sergeant Boeing testified that "we are trying to find the truth, whatever that might be; that once we believe what we have would be the truth, or it got to the point in the interview when the individual says that there's a statement I want to make in regard to this matter, then, we pull out the tape-recorder and record it." There appears to be nothing coercive about this technique. Further, our research finds no authority in Ohio law for Enfinger's proposition that an entire interrogation must be recorded.
 {¶ 18} Rather, in Ohio, for a defendant's statement to be admissible, the state must demonstrate that (1) the accused was given the Miranda warnings prior to any interrogation; (2) after receipt of the warnings, the defendant made an express statement that he desired to waive his constitutional rights; and (3) the defendant made a voluntary, knowing and intelligent waiver of those rights.[1] Here, the record shows that Enfinger was advised of his Miranda rights prior to the preliminary interview and prior to the taped statement, and that he waived those rights voluntarily, intelligently, and knowingly. Because Enfinger waived his rights, we hold that the trial court did not err in admitting Enfinger's statements into evidence.
 {¶ 19} Additionally, Enfinger contends that Sergeant Boeing should not have been permitted at trial to interpret Enfinger's unrecorded statements as something tantamount to a confession that he had intentionally driven over Mills, because in his taped statement Enfinger had not used the term "intentionally." Because the record demonstrates that Enfinger was advised of hisMiranda rights and knowingly waived his constitutional rights prior to giving his unrecorded statement, we hold that the officer's testimony concerning Enfinger's statements was admissible. To the extent that there was any error in Boeing's testimony that the phrase "in the gangster way" meant to "intentionally" run over someone with a car, we hold that error was harmless because Enfinger said in his recorded statement that he was "going to do it the gangster way" and then admitted to "driving over" Mills.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} In his second assignment of error, Enfinger contends that the jury's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 22} To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[2]
 {¶ 23} Here, Enfinger argues that two of the state's witnesses, Berry and Jones, testified that Enfinger had not purposely hit Mills with the car. While both Berry and Jones did testify, very reluctantly and on cross-examination, to that effect, their taped statements to the police both indicated that Enfinger had purposely hit Mills with the car. While these taped statements were not admitted into evidence, portions of the statements were referred to in the record because they were being used to refresh the recollection of the witnesses.
 {¶ 24} Accordingly, based on our review of the record, we hold that the jury did not lose its way and create a manifest miscarriage of justice in finding that Enfinger had purposefully run over Mills and was guilty of murder.
 {¶ 25} In his final assignment of error, Enfinger maintains that the trial court erred by denying his motion for a mistrial in light of prosecutorial misconduct during closing argument. We disagree.
 {¶ 26} In reviewing whether a trial court has properly refused to declare a mistrial, the Ohio Supreme Court has held that great deference should be given to the trial court in light of its ability to best determine whether the situation in the courtroom warrants the declaration of a mistrial.[3]
Accordingly, "an appellate court will not disturb the trial court's exercise of discretion absent a showing that the accused has suffered material prejudice."[4]
 {¶ 27} In order for a conviction to be reversed for prosecutorial misconduct, the alleged misconduct must have deprived the accused of a fair trial.[5] Here, Enfinger takes issue with the prosecutor's actions during closing argument. Initially, we note that the trial court did instruct the jury that the comments of counsel during closing arguments were not evidence.
 {¶ 28} Enfinger first contends that it was prosecutorial misconduct for the state to comment on the defense's failure to call Doug Warren as a witness. The record demonstrates that Warren had been in the car at some point in the night, but it was unclear, based on Berry's testimony, whether he was in the car when Enfinger ran over Mills. We hold that even if this comment was improper, Enfinger did not suffer any prejudice because he had stated to police that Warren was not in the car at the time Mills was fatally injured. Thus, the jury could have reasonably presumed that the defense had not called Warren because he was not a witness to the act.
 {¶ 29} Next, Enfinger argues that the prosecutor committed misconduct by reading portions of Jones's and Berry's statements, which had not been admitted into evidence. The state concedes this was error, but we conclude that Enfinger suffered no prejudice from this because his own statement that he had run over Mills was in evidence. We also hold that the prosecutor's examples used to distinguish the offenses of aggravated vehicular homicide from murder were not improper in light of the defense's request that the jury be instructed on the lesser-included offense of aggravated vehicular homicide.
 {¶ 30} Finally, Enfinger claims that the prosecutor's comment to the jury that he thought that their "mind and heart" would tell them that Enfinger had purposefully caused the death of Mills constituted misconduct. Enfinger did not object to this comment at trial so we review it under a plain-error standard.[6] We are not persuaded that the outcome of the trial would have been different but for this remark, in light of the evidence admitted at trial and the prosecutor's prior comment that the jury was to use common sense in evaluating the evidence.
 {¶ 31} Accordingly, we hold that any prosecutorial misconduct in this case did not materially prejudice Enfinger and that the trial court did not err in refusing to declare a mistrial. The third assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J., Hildebrandt and Painter, JJ., concur.
[1] State v. Cedeno (Oct. 23, 1998), 1st Dist. No. C-970465, citing State v. Edwards (1976), 49 Ohio St.2d 31, 38,358 N.E.2d 1051.
[2] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[3] See State v. Glover (1988), 35 Ohio St.3d 18, 19,517 N.E.2d 900.
[4] State v. Stanley (1997), 121 Ohio App.3d 673, 699,700 N.E.2d 881, citing State v. Sage (1987), 31 Ohio St.3d 173,182, 510 N.E.2d 343.
[5] State v. Fears (1999), 86 Ohio St.3d 329,715 N.E.2d 136.
[6] State v. Craft (1977), 52 Ohio App.2d 1,367 N.E.2d 1221.