OPINION
{¶ 1} Appellant Michael Moyer appeals the denial of his motion to suppress and his subsequent commitment to the Department of Youth Services in the Licking County Court of Common Pleas, Juvenile Division. Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 15, 2002, a family member notified Licking County Child Services of possible sexual abuse involving appellant and his cousins, ages 8, 5 and 4, on several occasions between November, 2001, and January, 2002.
 {¶ 3} On February 21, 2002, Melissa Terry, a Licking County Child Services ("LCCS") worker familiar with appellant's family, investigated the sexual abuse allegations. She contacted the Buckeye Lake Police Department to schedule an interview with appellant, and talked to appellant's case worker and probation officer. At the time, appellant was twelve years old and in detention for truancy. Terry did not contact appellant's guardian ad litem or his attorney. Appellant's grandmother was contacted, but not invited to attend the interview with appellant.
 {¶ 4} On February 21, 2002, appellant was taken from detention to a conference room in the probation department, and questioned by Terry and a uniformed officer, Sergeant Judy Hansey. Appellant was in handcuffs and shackles, and did not recall any prior contact with either Terry or Officer Hansey.
 {¶ 5} According to Terry, after she and Officer Hansey introduced themselves, Hansey pulled out a sheet of paper and went over appellant's rights, and appellant signed the waiver form. The questioning lasted close to two hours, and the transcript reveals appellant denied the sexual abuse allegations, cried, then admitted the allegations. Appellant was then taken from the conference room and brought back to the room to be questioned and tape recorded.
 {¶ 6} Appellant repeatedly complained of being tired and stated he had answered all the questions. Appellant then terminated the interview by throwing the tape recorder against the wall. Appellant cannot read and does not write well. He is considered severely learning disabled and requires special needs classes at school. He has attention deficit and hyperactivity disorder, and takes psychotropic medications.
 {¶ 7} Appellant moved the trial court to suppress the statements obtained on February 21, 2002. On May 15, 2002, the trial court conducted a suppression hearing, and ruled the statements admissible at trial. Specifically, the trial court held appellant may not have understood the consequences of the waiver, but he understood the basic concept of his rights.
 {¶ 8} Following a plea agreement, appellant entered a plea of no contest to two counts of rape, a felony of the first degree if committed by an adult, and in exchange the State dismissed four counts of rape. The trial court accepted the plea and adjudicated him a delinquent child, noting it accepted the plea in order for appellant to challenge the trial court's denial of his motion to suppress on direct appeal. The trial court committed appellant to the Ohio Department of Youth Services for a minimum of six years, maximum of his twenty-first birthday. The court calculated its disposition by committing appellant for a minimum of three years on each count and running the counts consecutively.
 {¶ 9} Appellant now appeals the trial court's denial of the motion to suppress and his six year commitment, assigning the following as error:
 {¶ 10} "I. The Juvenile Court erred in denying Michael Moyer's motion to suppress the statements he made during a custodial interrogation on February 21, 2002, because those statements were elicited in violation of his constitutional right against self-incrimination.
 {¶ 11} "II. R.C. 2152.17(F) violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and section 2, Article I of the Ohio Constitution because it does not require the juvenile court to make any findings before it imposes a consecutive sentence for a felony offense in a juvenile delinquency proceeding.
"III. The trial court erred when it failed to enter a disposition on the record in Michael's presence at the conclusion of the dispositional hearing in violation of the Fifth andFourteenth Amendments to the United States Constitution, Section16, Article I of the Ohio Constitutions, Crim. R. 43 and Juv. R. 29."
 I {¶ 12} Appellant's first assignment of error asserts the juvenile court erred in denying appellant's motion to suppress the statements made on February 21, 2002. Appellant maintains the statements were elicited in violation of his constitutional rights.
 {¶ 13} Appellant argues he did not knowingly, voluntarily and intelligently waive his Miranda rights.
 {¶ 14} At the suppression hearing, appellant informed the trial court he cannot read but can "write a little, but not good." Appellant stated, he "remembered some rights being read," but he did not understand them. Terry testified the officer "went over the form" but was "not sure" whether the officer went over each right with appellant individually to ensure he understood the concept of waiver.
 {¶ 15} The record reflects appellant is considered severely learning disabled and is enrolled in special needs classes at school. He is unable to read and can barely write. He has attention deficit with hyperactivity disorder. Additionally, he has mental health and behavioral problems, for which he takes the psychotropic medications Haldol and Depakote. The record also reflects neither Terry, nor Officer Hansey contacted appellant's attorney or guardian ad litem. Nor did they invite appellant's grandmother to attend the interview.
 {¶ 16} At the hearing on appellant's motion to suppress, the following exchange took place during the examination of Melissa Terry:
 {¶ 17} "Q. Okay. Can you describe for me, go through step by step, how did Sergeant Hansey go through Mirandising Michael?
 {¶ 18} "A. She explained that we wanted to talk to him and that she needed to Mirandise him in order to talk with him. She did start, you know, by number one, asking — you know, telling him that he had the right to remain silent. She read each specific element on this to him.
* * *
 {¶ 19} "A. I believe she was asking him as each one went through but I can't be positive."
 {¶ 20} Tr. at 23, 25.
 {¶ 21} Terry admitted in her testimony she knew appellant was on medication, and had poor educational and behavioral skills. She also acknowledged appellant's statement he could not read and does not write well.
 {¶ 22} Appellant testified at the hearing:
 {¶ 23} "Q. You remember somebody reading it to ya?
 {¶ 24} "A. Not that. I remember some rights being read but I don't understand it — my rights.
 {¶ 25} "Q. Okay. You said somebody read you your rights. What rights are you talking about?
 {¶ 26} "A. The one, something about being — being silent and whatever you say can be used against you in the court of law, something like that.
 {¶ 27} "Q. Okay. Did anybody ask you if you understood your rights?
 {¶ 28} "A. No, sir.
 {¶ 29} "Q. You don't remember that happening?
 {¶ 30} "A. No.
 {¶ 31} "Q. There was also some — some testimony before that you've been arrested a couple times before for some delinquency charges. That — that's happened; right?
 {¶ 32} "A. Yes, sir.
 {¶ 33} Q. On those times that you were arrested before, had you ever been read your rights that you recall back then?
 {¶ 34} "A. No, I just got threw in the back of a police cruiser.
 {¶ 35} "Q. Okay. Were you ever questioned about anything back then; do you remember?
 {¶ 36} "A. No.
 {¶ 37} "Q. Okay. So, this would have been the first time you were ever questioned by the police that you recall?
 {¶ 38} "A. Yeah."
 {¶ 39} Tr. at 71, 72.
 {¶ 40} The United States Supreme Court has emphasized the admissions and confessions of juveniles require special attention. Haley v. Ohio (1948), 332 U.S. 596. In the case ofIn re Gault (1967), 387 U.S. 1, the United States Supreme Court recognized constitutional rights, such as the right to counsel and the Fifth Amendment privilege against self-incrimination, are applicable to juveniles. Under the case of Miranda v. Arizona
(1996), 384 U.S. 436, statements resulting from custodial interrogations are admissible only after a showing the procedural safeguards have been followed. Custodial statements are not admissible unless the state can prove the defendant knowingly, voluntarily and intelligently waived his or her Miranda rights. In the case of In re Gault, supra, at 55, the United States Supreme Court stated:
 {¶ 41} "We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique — but not in principle — depending upon the age of the child and the presence and competence of parents. * * * If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." (Emphasis added).
 {¶ 42} In Ohio, in order to determine whether a juvenile has waived his or her rights to remain silent and to have the assistance of counsel, we must examine the totality of the circumstances surrounding the waiver. In re Watson (1989),47 Ohio St.3d 86, 89.
The totality-of-the-circumstances approach requires an inquiry into all the circumstances surrounding the interrogation. This includes the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus.
The State does not dispute appellant was in custody at the time of interrogation. Accordingly, we must then determine whether appellant knowingly, voluntarily and intelligently waived his Miranda rights.
 {¶ 43} This case is similar to our prior decision in In ReHarris (June 7, 2000), Tusc. App. No. 1999AP030013. In Harris,
Harris' mother agreed to permit her son to review pictures at the New Philadelphia Police Department. The officer asked appellant to ride with him, in his cruiser, to the police department. When his mother returned from retrieving her keys, Harris had already left with the officer.
 {¶ 44} The officer recorded the conversation he had with appellant while driving to the station. After turning on the tape recorder, the officer read appellant his rights. Appellant's mother then gave the officer permission to search her apartment.
 {¶ 45} Subsequently, Harris and his mother went to the police department for a voice stress test. Both Harris and his mother consented to the test. His mother told the officer she would like to be in the room with appellant as the test was administered. The officer informed her, in Harris' presence, it was important for Harris and the officer to be alone during the test, but she would be able to watch the test process through a two-way mirror and hear the conversation.
 {¶ 46} The officer escorted Harris into an interview room, closed the door and began recording the interview. The officer read Harris his Miranda rights, and explained he was not under arrest and he could leave the room at any time. After making several incriminating statements, Harris asked for his mother and indicated he would tell her what happened. Finally, his mother stopped the questioning and stated she wanted to contact an attorney.
 {¶ 47} The record indicates Harris had normal intelligence for a child his age, and he was read each right individually to which he indicated he understood.
 {¶ 48} In Harris we concluded, based on the evidence, due to appellant's age, the intensity of the interview, the lack of appellant's criminal experience, and the absence of his mother when appellant allegedly waived his Miranda rights, appellant's waiver was not knowing, voluntary and intelligent. We further found the officer's explanation of appellant's Miranda rights was not sufficient in that it did little more than convey the basic Miranda warnings to appellant. We considered the presence or absence of a parent as a factor to consider in the totality of the circumstances surrounding the statement.
 {¶ 49} This case is more extreme than Harris, as neither appellant's grandmother, attorney, nor guardian ad litem were present to witness the interrogation. Further, appellant has mental and behavioral problems, and special needs, which Harris did not. He cannot read and does not write well. The officer in this case did not record the reading of the Miranda rights, and the case worker does not recall how they were read.
 {¶ 50} Upon review of the evidence, we find the totality of the circumstances indicates appellant did not knowingly, intelligently and voluntarily waive his rights; therefore, we sustain the assignment of error.
 II, III {¶ 51} Based on our disposition of the first assignment of error, we find the remaining assignments of error to be moot.
 {¶ 52} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is reversed and this matter is remanded to the trial court for further proceedings in accordance with the law and our opinion.
Hoffman, P.J. and Edwards, J. concur.
Farmer, J., concurs separately.