OPINION
{¶ 1} Defendant-Appellant David Oldham appeals from his conviction and sentence for one count of forcible rape and one count of gross sexual imposition. Both counts involved offenses against Oldham's seventeen-year-old stepdaughter. After the trial court denied Oldham's motion to suppress, he pled no contest to both of the *Page 2 
charges. On the day that the trial court sentenced Oldham to four years in prison, the court also advised Oldham that he would automatically be classified as an aggravated sexually oriented offender and explained the registration requirements to him. He now appeals.
 I {¶ 2} Oldham's first assignment of error:
 {¶ 3} "THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS IN FAILING TO PROVIDE APPELLANT WITH NOTICE THAT HE WOULD BE CLASSIFIED AUTOMATICALLY AS AN AGGRAVATED SEXUAL OFFENDER AT HIS SENTENCING HEARING."
 {¶ 4} In his first assignment of error, Oldham argues that the trial court committed error when it did not tell him prior to his plea that he would be designated as an aggravated sexually oriented offender. As a result of that failure, Oldham insists that his plea was not knowingly and voluntarily entered.
 {¶ 5} At the time Oldham entered his no contest pleas, the trial court indicated it would sentence Oldham within an agreed upon range of 3 — 4 years. The court advised Oldham he would be designated as a sexual offender but, upon asking whether there was agreement as to the particular sexual offender designation, the court was advised by the prosecutor that the particular designation "would depend upon the report," i.e. presentence investigation report. The trial court advised Oldham that in addition to the sexually oriented offender classification, it "could" classify him as a habitual sexual offender or it "could" classify him as a sexual predator. The trial court did not tell him that based on findings of guilty on his no contest pleas, he would *Page 3 
automatically be designated an aggravated sexually oriented offender.
 {¶ 6} The State correctly argues that the trial court was not required to advise Oldham of the collateral consequences — here, sexual offender classification — as a prerequisite to accepting his no contest pleas. However, the irregularity Oldham complains of is not that the trial court failed to inform him of those collateral consequences, but that the trial court misinformed him of those collateral consequences.
 {¶ 7} The State also argues that by advising Oldham that he could be classified as a sexual predator, he suffered no prejudice because sexual predator status and aggravated sexually oriented offender status carry the same registration and notification requirements. The problem with this argument is that the trial court informed Oldham that he "could" be designated a sexual predator — "depend(ing) upon the report" — whereas, in fact, the court was required to designate Oldham an "aggravated sexually oriented offender" on the charges to which he entered no contest pleas and was found guilty.
 {¶ 8} Crim.R. 11(C) obliges the trial court to be satisfied that guilty and no contest pleas are made voluntarily and knowingly before they may be accepted. It is commendable that some trial judges go beyond the express requirements of Crim.R. 11(C) in assuring that pleas are knowingly and voluntarily made. In doing so, however, the trial judge must impart accurate information. This didn't happen here. We are constrained to conclude that the record in this case fails to demonstrate that Oldham's no contest pleas were knowing and voluntary, and that he would have entered those pleas had he been told that an aggravated sexually oriented offender designation was *Page 4 
mandatory.
 {¶ 9} This assignment is sustained.
 II {¶ 10} Oldham's second assignment of error:
 {¶ 11} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 12} In his second assignment of error, Oldham maintains that he was denied the effective assistance of trial counsel because counsel failed to fully advise him of the mandatory aggravated sexually oriented offender designation. Given our disposition of the first assignment, Oldham's second assignment of error is overruled as moot.
 III {¶ 13} Oldham's third assignment of error:
 {¶ 14} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S WRITTEN STATEMENT, WHICH WAS SECURED IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 15} Finally, Oldham contends that the trial court should have suppressed his written confession because it was made as the result of police coercion. However, the record reflects that the statement was given knowingly and voluntarily, and there is no *Page 5 
evidence that Oldham's will was overborne.
 {¶ 16} In determining whether a confession was voluntary, the trial court must consider all of the circumstances surrounding the confession, including but not limited to: the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the questioning; the existence of any type of physical deprivation or mistreatment; and the existence of any form of threat or inducement.State v. Getsy (1998), 84 Ohio St.3d 180, 188, 702 N.E.2d 866, citingState v. Edwards (1976), 49 Ohio St.2d 31, 40-41, 358 N.E.2d 1051.
 {¶ 17} Both counts in this case involved Oldham's seventeen-year-old stepdaughter, who confided in a teacher about the abuse that occurred several months previously. The teacher reported the sexual abuse to the police. Oldham was arrested that evening and taken to the police station for questioning. At the station Oldham was un-handcuffed and placed in a standard interview room with two unarmed detectives, each dressed in casual attire. There is some question as to how long Oldham may have remained handcuffed in the rear of the cruiser after his arrest and how long he may have waited in the interview room prior to questioning. It is clear, however, that the interview began less than two hours after his arrest.
 {¶ 18} At the outset of the interview Detective Lewis read Oldham hisMiranda rights. Waiving those rights both verbally and in writing, he agreed to talk with the police. Oldham initially denied the allegations, conceding only that his hand might have slipped between his stepdaughter's legs while they were wrestling. The detective told Oldham that he had already spoken with Oldham's wife and victim, and he encouraged Oldham to tell the truth. Oldham then confessed to a single instance of *Page 6 
digital penetration. The entire interview, including the waiver of rights, collection of background information, and verbal confession, lasted only five minutes. We see nothing about the conditions surrounding the brief interview that were unduly coercive.
 {¶ 19} At the end of the interview, Detective Lewis asked Oldham for a written statement. When the detective returned ten or more minutes later, he reviewed the statement. He reminded Oldham to tell the truth and to write down exactly what he had told the detective, including the digital penetration. Detective Lewis returned the form to Oldham, who added a sentence to the end of his statement admitting the one incident. Admonitions by police officers to tell the truth are neither threats nor promises, and are acceptable interrogation techniques. State v.Loza (1994), 71 Ohio St.3d 61, 67, 641 N.E.2d 1082, citations omitted.
 {¶ 20} There being no evidence that Oldham's will was overborne, the trial court properly concluded that his confession was knowingly and voluntarily made and not subject to suppression. Oldham's third assignment of error is overruled.
 IV {¶ 21} Having sustained the first assignment of error, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.
WOLFF, P.J., FAIN, J. and GRADY, J., concur.