[Cite as *State v. Hamilton*, 2014-Ohio-2685.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| BYRON HAMILTON, JR. | : | Case No. 2013 AP 12 0061 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:   Appeal from the Tuscarawas County
                            Court of Common Pleas, Case No.
                            2013 CR 05 0090

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           June 10, 2014

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellee

MICHAEL. J. ERNEST                    PAUL HERVEY
Assistant Prosecuting Attorney        Fitzpatrick, Zimmerman & Rose Co., L.P.A.
125 E. High Avenue                    P.O. Box 1014
New Philadelphia, OH 44663            New Philadelphia, OH 44663

*Baldwin, J.*

{¶1}    Defendant-appellant Byron Hamilton, Jr. appeals from the denial by the Tuscarawas County Court of Common Pleas of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On June 3, 2013, the Tuscarawas County Grand Jury indicted appellant on one count of trafficking in drugs in violation of R.C. 2925.03(A)(1), a felony of the first degree, two counts of trafficking in drugs in violation of R.C. 2925.03(A)(1), felonies of the fourth degree, and one count of possession of drugs in violation of R.C. 2925.11(A), a felony of the second. The indictment also contained a forfeiture specification. At his arraignment on June 6, 2013, appellant entered a plea of not guilty to the charges.

{¶3}    Appellant, on June 26, 2013, filed a Motion to Suppress Statement. Appellant, in his motion, requested that any statements that he made to law enforcement officials on or about April 26, 2013 be suppressed because the statements were not voluntary. Appellant argued that even though he refused to sign a *Miranda* waiver after it was read to him and indicated that he did not want to answer any questions, law enforcement officials continued questioning him for at least 30 minutes.

{¶4}    A suppression hearing was held on September 6, 2013. At the hearing, Detective Charles Willett of the New Philadelphia Police Department testified that the department made some undercover narcotic buys from appellant. After the buys, appellant was arrested and taken to the New Philadelphia Police Department to be

interviewed on or around April 26, 2013. Another Detective was present in addition to Detective Willett. The interview was videotaped.

{¶5} Detective Willett testified that at the outset of the interview, he gave appellant a copy of his *Miranda* rights and then read them to him. Appellant, who indicated that he was able to read, did not sign the *Miranda* rights waiver portion of the form. According to the Detective, appellant understood the rights that were being read to him and advised them that he understood the *Miranda* rights and the waiver. Appellant also agreed that he had been read his *Miranda* rights before. The recorded interview was played for the court and marked as an exhibit.

{¶6} During the interview, appellant indicated that he did not want to sign the waiver form. The following is an excerpt from the transcribed interview:

{¶7} DETECTIVE:    All it says is that I read it to you and you understand it.

{¶8} DEFENDANT:   (Inaudible).

{¶9} DETECTIVE:   That's the only reason  --

{¶10} DEFENDANT:   "I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing." (Inaudible).

{¶11} DETECTIVE:   Okay. Well, all this is saying is that you understand that.

{¶12} DEFENDANT:   (Inaudible) I don't want to talk.

{¶13} DETECTIVE:  Exactly.

{¶14} DEFENDANT:   (Inaudible).

{¶15} DETECTIVE:   Okay, you're going to listen – okay, you're going to listen to what we have to say but you don't want to sign this?  Is that true?

{¶16}   DEFENDANT:  Yeah.

{¶17}   DETECTIVE:   Okay.  I'm just going to put here "refused."

{¶18}   DETECTIVE:   But you still want to talk to us, right?

{¶19}   DEFENDANT:   I just want to listen to what you all gotta say.

{¶20}   Transcript at 13-14.

{¶21}   The Detective then proceeded to inform appellant about the investigation into his drug dealing and told appellant that his "name constantly comes up with dealing drugs." Transcript at 15.  When Detective Willett asked appellant if he denied that they had bought heroin off of him that day out of an apartment, appellant stated that he was listening and, when asked if there would be any type of response from him, again reiterated that he was listening. Shortly thereafter, appellant admitted that he was selling heroin to maintain his habit, but denied that the heroin at issue in this case was his. Appellant also denied selling the heroin for someone else and indicated that someone gave him the heroin.

{¶22}   During the interview, appellant was told that if he needed help for his addiction, "now is your opportunity" and appellant indicated that he wanted help. Transcript at 18. The Detective told him that he had to be honest if he wanted help. Appellant denied selling drugs to the confidential informant that day, but later admitted that he had sold heroin at least once or twice out of the apartment that day.  Appellant told the officers that he sold to ten people a day. Later, appellant admitted that some of the heroin found in the apartment where he was located was his.

{¶23}   The following is an excerpt from the interview:

{¶24}   DETECTIVE:   How about this  -- if I give you the opportunity to write a statement --

{¶25}   DEFENDANT:   (Inaudible).

{¶26}   DETECTIVE:   It needs to say why you need help.  'I sell heroin to support my drug habit.  I need help.'  Put it in your own words but that is another admission that they're going to say, look, he's admitting it so he must need help, so they'll try to help you out.  Is that something you're willing to do?

{¶27}   DEFENDANT:   Yeah, I (inaudible).

{¶28}   DETECTIVE:   Because honestly as opposed to me  -- if it was me I'd want to put my own words  --

{¶29}   DETECTIVE:   (Inaudible), social security number, your cell phone number is and just write in there, 'I, Bryon Hamilton….'

{¶30}   DEFENDANT:   (Inaudible).

{¶31}   DETECTIVE:   What's that?

{¶32}   DEFENDANT:    If I write it (inaudible) part of the – what I'm going to be charged with?

{¶33}   DETECTIVE:   Listen, it's an admission that you use, that you sell and use heroin but you sell heroin to support your heroin addiction.  Is that right?  It's up to you.  Like I said, it's in your words and it's not like –

{¶34}   DETECTIVE:   We're not telling you what to say, man, you know.  We can't tell you  --

{¶35} DETECTIVE: When the prosecutor says what'd he say I can say, look, this is what he said. This is his words. I'm not making is up for him. He says he sold it to support his habit.

{¶36} DEFENDANT: (Inaudible).

{¶37} DETECTIVE: Just put your address, social security number, phone number, mailing address, where you receive mail.

{¶38} DETECTIVE: Is that like mom's address or something? Okay. That's fine.

{¶39} DETECTIVE: (Inaudible).

{¶40} DETECTIVE: In your own words. (Inaudible). Put your cell phone number right there. Just put in your own words what's taken place. Sign the bottom. I'll read it back to you.

"Byron Hamilton, 9741 Summerset, Detroit, Michigan, 313-530-4096." Says, "I really need help. I sell to support my habit just to get by. Using has took me under. I'm just asking for your help please."

{¶41} DETECTIVE: Can you put on here what you sell? Did you sell more than heroin? No? Just put "I sell heroin" because you just said "I sell for my habit." They're gonna want you to identify what it is that you sell. Even "I sell heroin cause I'm addicted to heroin." (Inaudible) H-e-r-o-i-n.

"I really need help. I sell to support my habit just to get by. Using has took me under. I'm just asking for help. I sell heroin to feed my addition (sic)." Is that true? I did not make you write this, is this correct?

{¶42} DEFENDANT: No, sir.

{¶43}   Transcript at 36-38.

{¶44}   At the hearing, Detective Willett testified that before the interview, appellant never indicated that he wished to speak to an attorney or that he was exercising his right to remain silent and was refusing to answer any questions or speak with the detective.

{¶45}   On cross-examination, Detective Willett admitted that they kept asking appellant questions for 40 minutes after appellant said that he would listen. He further indicted that after appellant wrote out his statement, he asked appellant to add a line about heroin. He testified that he never heard appellant say he wanted to waive his *Miranda* rights. On redirect, Detective Willett testified that he never heard appellant say that he wanted a lawyer or that he wished to remain silent. On recross, he also stated that he never heard appellant say he wanted to waive his right to remain silent or right to counsel before questioning.

{¶46}   After the suppression hearing, both parties filed briefs. Pursuant to a Judgment Entry filed on October 17, 2013, the trial court overruled appellant's Motion to Suppress. The trial court found that appellant had waived his constitutional right to remain silent during the interview, to have an attorney present, to have an attorney appointed to represent him if he could not afford to pay for one, and to "have the dialog between [appellant] and the agents of the State of Ohio cease upon his directive."

{¶47}   Thereafter, on October 28, 2013, appellant withdrew his former not guilty plea and entered a plea of no contest to the charges in the indictment.   Pursuant to a Judgment Entry filed on December 16, 2013, appellant was sentenced to an aggregate prison sentence of three (3) years. The trial court also dismissed the charge of

possession of drugs with prejudice as an alternative charge and ordered that the cash seized at the time of appellant's arrest be forfeited.

{¶48}   Appellant now raises the following assignment of error on appeal:

{¶49}   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO SUPPRESS THE APPELLANT'S ORAL AND WRITTEN STATEMENTS TO POLICE WHILE IN CUSTODY AND AFTER HE REFUSED TO WAIVE HIS *MIRANDA* RIGHTS.

I

{¶50}   Appellant, in his sole assignment of error, argues that the trial court erred when it overruled his Motion to Suppress. We disagree.

{¶51}   Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154,1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶52}   There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams,* supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶53}   Appellant, in the case sub judice, argues that the trial court should have suppressed his statements, both oral and written, because they were not voluntary. Appellant, who undisputedly was in custody and was advised of his *Miranda* rights, notes that he refused to waive his constitutional right to remain silent and argues that the Detectives in this case badgered him for a confession for 30 minutes.

{¶54}   To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v.*

*Edwards,* 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds), citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966).

{¶55}   However, contrary to the second prong in *Edwards,* the Supreme Court held that the prosecution "does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence."  *Berghuis v. Thompkins,* 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed .2d 1098 (2010). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accuser's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.*   That is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.

{¶*56}*   The United States Supreme Court, in *Berghuis*, held that a defendant does not invoke the right to remain silent by merely remaining silent. Rather, the defendant must unambiguously express that he does not want to make a statement. *Id.*

{¶57}   In the case sub judice, the record demonstrates that appellant was advised of his *Miranda* rights and was familiar with such rights. The tape of the interview shows that appellant read the *Miranda* rights form himself. However, appellant refused to sign the form indicating that he was waiving the rights read to him. Appellant never indicated that he did not understand the rights that were read to him.

{¶58}   Appellant, after being advised of his rights, told the Detectives that he wanted to listen to what they had to say and subsequently, after hearing the evidence against him, admitted to selling heroin. While appellant contends that he was badgered

during the interview, our review of the taped interview does not support such allegation. The Detectives did not coerce appellant or badger him. Rather, appellant voluntarily spoke with the Detectives. When a suspect understands his rights in full, he waives his right to remain silent by making a voluntary statement to police. *Berghuis at 388-389.* Appellant did so in this case.

{¶59} We find that because appellant was aware of his right to remain silent, and his decision to speak to the Detectives who interviewed him was inconsistent with the exercise of that right, appellant implicitly waived his right when he began speaking.

{¶60} Appellant's sole assignment of error is, therefore, overruled.

{¶61} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Gwin, J. concur.